## CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY *v.* HARRISON, SHERIFF OF PITTSBURG COUNTY, OKLAHOMA.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF OKLAHOMA.

No. 45.  Argued November 3, 4, 1914.—Decided November 30, 1914.

A Federal instrumentality acting under Congressional authority cannot be subjected to an occupation or privilege tax by a State. *Farmers' Bank* v. *Minnesota,* 232 U. S. 516.

Where the agreement between the Government and an Indian tribe imposes upon the Government a definite duty in regard to operation of coal mines, as is the case with the Choctaw and Chickasaw agreement of April 23, 1897, lessees of the mines are the instrumentalities through which the obligation of the United States is carried into effect, and they cannot be subjected to an occupation or privilege tax by the State in which the mines are located.

Neither state courts nor legislatures, by giving a tax a particular name, can take from this court its duty to consider its real nature and effect. *Galveston &c. Ry. Co.* v. *Texas,* 210 U. S. 227.

Where the manifest purpose of a gross revenue tax equal to a specified percentage on gross receipts from production of a mine in addition to

taxes levied and collected upon an *ad valorem* basis, is to reach all sales and secure such percentage, the tax is, in effect, a privilege or occupation tax; and so *held* as to such a tax imposed by Oklahoma on persons engaged in mining and producing coal.

THE facts, which involve the constitutionality of a gross revenue tax levied by the State of Oklahoma on persons engaged in mining and the production of coal, and the power of a State to tax instrumentalities of the Federal Government, are stated in the opinion.

*Mr. J. G. Gamble*, with whom *Mr. M. L. Bell* and *Mr. C. O. Blake* were on the brief, for appellant.

*Mr. A. L. Hull*, with whom *Mr. Charles West*, Attorney General of the State of Oklahoma, was on the brief, for appellee:

The state court has held the mining tax to be one on property—not a license tax. *McAlester Coal Co.* v. *Trapp*, 141 Pac. Rep. 794; *Meyer* v. *Wells, Fargo & Co.*, 204 Fed. Rep. 140; *S. C.*, 223 U. S. 298, distinguished.

This is a tax on property and is not an interference with the Federal Government in its care of the Indians. See cases *supra.*

The internal evidence of § 8 is that this is a property tax.

Section 6 is the section levying a tax on mineral production. The rebate provided for in § 8 is an attempt to avoid a duplication of taxation on the same property.

While the lessees of both coal and oil lands in a certain sense are Federal instrumentalities, they are no more so than Indian traders or lessees of Indian grazing lands are such. The property, though on Indian Reservations, is taxable, provided it is not taxed so as to interfere with the Federal purpose they subserve.

Likewise the ores and minerals while in the earth upon

segregated or Indian lands, are not taxable by the State. But the ore, coal, or oil when severed from the soil is taxable as the property of the non-exempt lessee, citizen of the United States and of this State.

Under these circumstances, especially during the time the vast majority of the real estate in what was Indian Territory, remains inalienable and non-taxable, is it to be supposed that the State of Oklahoma, as a matter of convenience, would prefer to place its tax on the privilege of mining or the mined product as property?

If the latter is the method selected, harmony with § 8 and an effective tax is provided for; but, if the legislature did not mean to levy a property tax but a privilege tax only, then the vast oil industry in Eastern Oklahoma as well as the large coal industry is probably to go entirely untaxed. And until the Indian lands are taxable, the cities and Western Oklahoma are to bear the burden of government. A conclusion so unjust will not be reached. As a property tax the tax measured by output is sound.

Complainant is only a licensee. A coal lease payable in royalty though on government land is taxable property. *Honing Co.* v. *Dillon*, 6 L. R. A. (N. S.) 628; *Forbes* v. *Gracey*, Fed. Cas. 4924; *S. C.*, 94 U. S. 762; *Moore* v. *Beason*, 51 Pac. Rep. 875; *State* v. *Bell*, Phil. N. C. 76; *Conder* v. *McMillan*, 56 Pac. Rep. 965; *Noble* v. *Amoretti*, 71 Pac. Rep. 879.

*Weston* v. *Charleston*, 2 Pet. 449, distinguished; and see *Snyder* v. *Bettman*, 190 U. S. 249; *South Carolina* v. *United States*, 199 U. S. 437; *Baltimore Ship Co.* v. *Baltimore*, 54 Atl. Rep. 623; *S. C.*, 195 U. S. 375; *Thomson* v. *Un. Pac. Ry.*, 9 Wall. 579, 591; *Lane Co.* v. *Oregon*, 7 Wall. 77.

An exemption from state taxation, of agencies of the National Government depends not on the nature of their agency, but whether the tax does in truth deprive them of the power to serve the Government as they were in-

tended to serve it. *Thomson* v. *Un. Pac. Ry.*, *supra;*. *Railroad Company* v. *Peniston*, 18 Wall. 5. In both of the cases emphasis was laid upon the question of whether the hindrance is remote or direct. And see *First National Bank* v. *Kentucky*, 9 Wall. 353; *Utah Navigation Co.* v. *Fisher*, 116 U. S. 28; *M. & P. Co.* v. *Arizona*, 156 U. S. 347; *Cherokee Nation* v. *Southern Kansas Ry.*, 135 U. S. 641.

Neither a tax on a Federal instrumentality nor other tax which only in a remote way interferes with a Federal purpose, is void. *West. Un. Tel. Co.* v. *Massachusetts*, 125 U. S. 549; *Ficklin* v. *Shelby Co.*, 145 U. S. 1; *Reagan* v. *Mercantile Co.*, 154 U. S. 413; *Postal Tel.* Co. v. *Adams*, 155 U. S. 687, 696; *N. Y., L. E. & W. Ry.* v. *Pennsylvania*, 158 U. S. 431; *Central Pacific* v. *California*, 162 U. S. 125; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150; *Thomas* v. *Gay*, 169 U. S. 264; *Wagoner* v. *Evans*, 170 U. S. 586; *Montana Mission* v. *Missoula Co.*, 200 U. S. 118.

The tax is an output, less royalty, and that argues that it is a property tax.

Mr. Justice McReynolds delivered the opinion of the court.

By an original bill filed July 19, 1909, in the Circuit Court of the United States, Eastern District of Oklahoma, appellant sought to enjoin the sheriff of Pittsburg County from collecting taxes claimed by the State upon the gross sale of coals dug from mines belonging to the Choctaw and Chickasaw Indians which it leased and operated. The claim was based on the Oklahoma statute which provides for a gross revenue tax; and was resisted upon the ground (among others) that in reality the demand was for an occupation or privilege tax to which the appellant could not lawfully be subjected, because, as a Federal instrumentality acting under Con-

gressional authority, it had leased and was operating mines to which the Indians held title. A general demurrer was sustained, and the cause is here by direct appeal.

No objection has been interposed to the forum selected or the procedure adopted. *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298.

Appellant is a railroad corporation with power to lease and operate coal mines. In the region formerly known as Indian Territory—now within the State of Oklahoma— the Choctaw and Chickasaw Indians, as wards of the United States, own a large area of segregated and unallotted lands containing valuable coal deposits which are not subject to taxation by the State. *Tiger* v. *Western Investment Co.*, 221 U. S. 286, 310, 312; *Ex parte Webb*, 225 U. S. 663, 684.

The act of Congress approved June 28, 1898, c. 517, 30 Stat. 495, 510,—"Curtis Act," ratified, confirmed and put into effect the Atoka Agreement of April 23, 1897, between the United States and the Choctaws and Chickasaws, which provided that their coal lands should remain common property of the members of the tribes; that the revenues derived therefrom should be used for the education of their children; that the mines thereon should be under the supervision and control of two trustees appointed by the President and subject to rules prescribed by the Secretary of the Interior; that all such mines should be operated and the royalties paid into the Treasury of the United States; that the royalty should be fifteen cents per ton, with power in the Secretary of the Interior to reduce or advance the same according to the best interests of the tribes; and that all lessees should pay fixed sums as advanced royalties.

In harmony with the provisions of the Curtis Act appellant secured from the duly appointed trustees leases of certain mines obligating itself to take out annually

specified amounts of coal, and to pay the stipulated royalty. It proceeded actively to develop these, either directly or through its agent, and for some years before the present suit was begun took therefrom large quantities of coal and fully complied with the obligations assumed.

Section 6 of the Oklahoma statute approved May 26, 1908 (Session Laws, 1908, pp. 640, 642), entitled "An Act providing for the levy and collection of a gross revenue tax from . . . persons, firms, corporations or associations engaged in the mining or production of coal, . . ." provides: "Every person, firm, association, or corporation engaged in the mining, or production, within this state, of coal . . . shall, within thirty days after the expiration of each quarter annual period expiring respectively on the first day of July, October, January and April of each year, file with the state auditor a statement under oath, on forms prescribed by him, showing the location of each mine . . . operated by such person, firm, association, or corporation during the last preceding quarter annual period, the kind of mineral; . . . the gross amount thereof produced; the actual cash value thereof; . . . and shall at the same time, pay to the state treasurer a gross revenue tax, which shall be in addition to the taxes levied, and collected upon an *ad valorem* basis upon such mining . . . property and the appurtenances thereunto belonging, equal to two per centum of the gross receipts from the total production of coal therefrom . . ." An amendment of March 27, 1909, (Laws 1909, p. 624) changed the quarterly periods and reduced the rate on receipts to one-half of one per centum.

Appellants furnished the auditor with a statement of the output of the mines operated, but declined to pay the tax assessed upon the gross receipts from sales. Thereupon the sheriff, under directions of the auditor, was

about to enforce the demand by a levy, and the present bill was filed to restrain him.

From the foregoing it seems manifest that the agreement with the Indians imposed upon the United States a definite duty in respect to opening and operating the coal mines upon their lands, and appellant is the instrumentality through which this obligation is being carried into effect. Such an agency cannot be subjected to an occupation or privilege tax by a State. *M'Culloch* v. *Maryland*, 4 Wheat. 316, 425; *Farmers Bank* v. *Minnesota*, 232 U. S. 516. But it is insisted that the statute rightly understood prescribed only an *ad valorem* imposition on the personal property owned by appellant—the coal at the pit's mouth,—which is permissible according to many opinions of this court. *Thomson* v. *Pacific Railroad*, 9 Wall. 579; *Union Pacific Railroad* v. *Peniston*, 18 Wall. 5; *Central Pacific Railroad* v. *California*, 162 U. S. 91; *Thomas* v. *Gay*, 169 U. S. 264.

The court below held that the effect of the act was to lay a valid tax on personalty, and the same result was subsequently reached by the Supreme Court of Oklahoma. *McAlester-Edwards Coal Co.* v. *Trapp*, 38 Oklahoma, 792, 794. The United States District Court for the Western District of Oklahoma arrived at a different conclusion. *Missouri, Kansas & Texas Ry.* v. *Meyer*, 204 Fed. Rep. 140.

Neither state courts nor legislatures by giving a tax a particular name, or by the use of some form of words, can take away our duty to consider its real nature and effect. *Galveston, Harrisburg & San Antonio Ry.* v. *Texas*, 210 U. S. 217, 227.

It is unnecessary to consider the power of the State of Oklahoma to treat coals dug from mines operated by the appellant as other personalty and to subject them to a uniform *ad valorem* tax, for it seems to us clear that the act of 1908 provided for no such imposition. Its very

language imposes a "gross revenue tax which shall be in addition to the taxes levied and collected upon an *ad valorem* basis." We cannot, therefore, conclude that the gross receipts were intended merely to represent the measure of the value of property liable to a general assessment—provision is made for determining that upon a different basis. *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298, 301. The requirement is not on account of property owned on a given day, as is the general custom where *ad valorem* taxes are provided for and as the Oklahoma laws require; but the manifest purpose is to reach all sales and secure a certain percentage thereof—a method commonly pursued in respect of license and occupation taxes. *Pullman Co.* v. *Knott, ante,* p. 23.

A tax upon a merchant's, manufacturer's, or miner's gross sales is not the same thing as one on his stock treated as property. Cooley on Taxation (3rd ed.), p. 1095. The former is upon his business. In effect, the Oklahoma Act prescribes an occupation tax (*Ohio Tax Cases*, 232 U. S. 576, 592); and, accepting as true the allegations of appellant's bill, we think it cannot lawfully be subjected thereto. The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*