## JAYBIRD MINING COMPANY *v.* WEIR, COUNTY TREASURER.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 293.   Argued April 29, 1926.—Decided June 7, 1926.

1. Where mining land owned by incompetent Quapaw Indians under a patent subject to a restriction against alienation, was leased on their behalf with the approval of the Secretary of the Interior, under the Act of June 7, 1897, to a mining company in consideration of a royalty or percentage of the gross proceeds to be derived from sale of ores mined, a state *ad valorem* tax assessed to the lessee on ores mined and in the bins on the land, before sale and when the royalties or equitable interests of the Indians had not been paid or segregated, is void, as an attempt to tax an agency of the Federal Government.  P. 612.
2. Judgment of state court *held* reviewable by writ of error, and certiorari denied.  P. 614.
104 Okla. 271, reversed.

ERROR to a judgment of the Supreme Court of Oklahoma which reversed a judgment for the Mining Company in a suit to recover a tax, paid under protest.

9542°—26——39

*Mr. A. Scott Thompson,* with whom *Messrs. A. C. Wallace, Vern E. Thompson,* and *Ray McNaughton* were on the brief, for plaintiff in error.

*Mr. John H. Venable,* with whom *Messrs. A. L. Commons* and *Wm. H. Thomas* were on the brief, for defendant in error.

The United States Government has nothing to do with the organization of the mining company involved in this case. All the interest it has is to collect the royalties after the lead and zinc ore has been sold or its value ascertained—not in kind but in money. And, on failure of the mining company to comply with its lease, the Government may bring suit for the Indian for the royalty; and, for a failure to operate the mine in the manner provided, it may forfeit the lease. The State can tax even the operation of the mining company, where it is operating on land other than restricted Indian land, and the Government could as easily say you are placing a burden on an instrumentality.

No tangible property is ever exempt from taxation without some constitutional or statutory provision specifically exempting it; never by implication. *McCulloch* v. *Maryland,* 4 Wheat. 116. What we are attempting in this case is to require a visible, tangible and very valuable class of property, found with the great mass of the property of the State, to bear its just burden of *ad valorem* taxation along with other property in the State of the same class, and all other tangible property. *Territory Illuminating Oil Co.* v. *Oklahoma,* 240 U. S. 522, and *Gillespie* v. *Oklahoma,* 259 U. S. 501, distinguished. No such case has been passed on by this Court where there was specific tangible property involved. Cf. *Shaffer* v. *Carter,* 252 U. S. 37; *In re Skelton Lead & Zinc Co.'s Gross Production Tax of 1919,* 81 Okla. 134.

Ore extracted from rock or dirt after it is brought from the mine is the personal property of the person or corpora-

tion who has extracted it. *Forbes* v. *Gracey,* 94 U. S. 762; *Kans. Nat'l. Gas Co.* v. *Haskell,* 172 Fed. 545; *Thomson* v. *Union Pac. Ry. Co.,* 9 Wall. 579. We have no doubt that Congress could authorize the creation of a corporation to mine for lead and zinc ores on restricted Indian lands, and specifically exempt any and all its property from state taxation, and might authorize the leasing of the land to corporations and thus exempt all the property of such a corporation, including the products of its mines; but we believe that, if such extreme regulation had been intended by the Acts of Congress, under which the petitioner holds its leases, the intention would have been expressed. *Van Allen* v. *Assessors,* 3 Wall. 573; *Bradley* v. *People,* 4 Wall. 459. There is a clear distinction between the means employed by the Government and the property of agents of the Government in the performance of contracts with the Government. *Thomson* v. *Union Pac. Ry. Co.,* 9 Wall. 579; *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362; *Thomas* v. *Gay,* 169 U. S. 264; *Union Pac. Ry. Co.* v. *Peniston,* 18 Wall. 5; *Central Pac. R. R. Co.* v. *California,* 162 U. S. 91; *Elder* v. *Wood,* 208 U. S. 226; *Forbes* v. *Gracey,* 94 U. S. 762; *Utah & N. W. Ry. Co.* v. *Fisher,* 116 U. S. 28; *Marocipa & Pac. Ry. Co.* v. *Arizona,* 156 U. S. 347; *Wagoner* v. *Evans,* 194 U. S. 588; *Montana Catholic Missions* v. *Missoula County Assessor,* 200 U. S. 118; *Choctaw, O. & G. R. R. Co.* v. *Harrison,* 235 U. S. 292; *Gillespie* v. *Oklahoma,* 257 U. S. 501.

Mr. Justice Butler delivered the opinion of the Court.

The mining company sued in the District Court of Ottawa County to recover a tax of $2,319.80 paid under protest. The County Treasurer demurred to the petition asserting that it failed to state a cause of action. The demurrer was overruled, and judgment was given for the plaintiff. On appeal to the highest court of the State the

judgment was reversed. 104 Okla. 271. The case is here on writ of error. § 237, Judicial Code.

Briefly the facts are these. September 26, 1896, pursuant to the Act of March 2, 1895, c. 188, 28 Stat. 876, 907, there was issued to Hum-bah-wat-tah Quapaw, a Quapaw Indian, a patent for an allotment of 40 acres of land in Ottawa County. The patent contained restrictions against alienation for twenty-five years, and by the Act of March 3, 1921, c. 119, 41 Stat. 1225, 1248, that period was extended for an additional twenty-five years. The land is owned by the heirs of the allottee. The company has a mining lease on the restricted land on terms which provide for the payment of royalties or a percentage of the gross proceeds derived from the sale of ores mined. The amount sued for is an *ad valorem* tax assessed by the county officials under § 9814, Compiled Statutes of 1921, on lead and zinc ores mined by the company in 1920, and which were in its bins on the land January 1, 1921. This tax is in addition to a gross production tax paid to the State Auditor. It was assessed on the ores in mass; and the royalties or equitable interests of the Indians had not been paid or segregated. Prior to the production of the ores taxed, the Secretary of the Interior determined the Indian owners to be incapable of managing their property and assumed control of it in their behalf. Act of June 7, 1897, c. 3, 30 Stat. 62, 72. Since that time, the royalties have been paid directly to the Secretary.

The Quapaw Indians are under the guardianship of the United States. The land and Indian owners are bound by restrictions specified in the patent and the Acts referred to. It is the duty and established policy of the government to protect these dependents in respect of their property. The restrictions imposed are in furtherance of that policy. *United States* v. *Noble,* 237 U. S. 74; *Goodrum* v. *Buffalo,* 162 Fed. 817. The lessee is an

agency or instrumentality employed by the government
for the development and use of the restricted land and to
mine ores therefrom for the benefit of its Indian wards.
*Choctaw & Gulf R. R.* v. *Harrison,* 235 U. S. 292. It is
elementary that the federal government in all its activi-
ties is independent of state control. This rule is broadly
applied. And, without congressional consent, no federal
agency or instrumentality can be taxed by state author-
ity. " With regard to taxation, no matter how reason-
able, or how universal and undiscriminating, the State's
inability to interfere has been regarded as established
since *McCulloch* v. *Maryland,* 4 Wheat. 316." *Johnson*
v. *Maryland,* 254 U. S. 51, 55. And see *Farmers Bank* v.
*Minnesota,* 232 U. S. 516; *Choctaw & Gulf R. R.* v. *Har-
rison, supra; Gillespie* v. *Oklahoma,* 257 U. S. 501, 505.

This court has considered a number of cases quite like
the one now before us. In *Choctaw & Gulf R. R.* v. *Har-
rison, supra,* there was an agreement by the United States
that coal lands belonging in common to the members of
the Choctaw and Chickasaw tribes should be mined, and
that the royalties should be used for the Indians. The
State imposed a tax equal to two per centum on the gross
receipts from the total production of coal from the mine.
It was held that it was an occupation or privilege tax, and
that one having a mining lease made in furtherance of
the governmental purpose could not be subjected to that
burden. In *Indian Oil Co.* v. *Oklahoma,* 240 U. S. 522,
it was held that oil leases of land made by the Osage tribe
were under the protection of the federal government, and
that the State could not tax such leases either directly
or as represented by the capital stock of the corporation
owning them. It was said (p. 530): "A tax upon the
leases is a tax upon the power to make them, and could
be used to destroy the power to make them. If they can-
not be taxed as entities they cannot be taxed vicariously
by taxing the stock, whose only value is their value, or

by taking the stock as an evidence or measure of their value, . . ." In *Howard* v. *The Oil Companies*, 247 U. S. 503, this court affirmed, *per curiam*, the judgment of the United States District Court for the Western District of Oklahoma enjoining the enforcement of a tax imposed by the State on the gross value of the production of oil and gas, less the royalty interest, under leases upon Osage lands made for the benefit of the Indians. In *Large Oil Co.* v. *Howard*, 248 U. S. 549, this court reversed, *per curiam*, the judgment of the supreme court of Oklahoma (63 Okla. 143) sustaining a tax on gross value of production of petroleum and gas, less the royalty interest, where the owner of the property sought to be taxed was engaged under the authority of the Secretary of the Interior in the production of oil and gas in what formerly constituted the tribal lands of the Osage Nation. And in *Gillespie* v. *Oklahoma, supra,* it was held that the net income derived by a lessee from the sale of his share of the oil and gas received under leases of restricted Creek and Osage lands could not be taxed by the State. In each of these cases the tax was condemned as an attempt to tax an instrumentality used by the United States in fulfilling its duties to the Indians.

In this case the lease was made to secure the development of the lands and obtain for the benefit of the restricted Indian owners a percentage of the gross proceeds of the ores to be mined. The *ad valorem* tax here in controversy was assessed on the ores in mass at the mine before sale, and that was an attempt to tax an agency of the federal government within the principle of the cases cited.

From abundance of caution the company presented a petition for a writ of certiorari; but, as a writ of error lies, the petition will be denied. *Gillespie* v. *Oklahoma, supra,* 506.

*Judgment reversed.*

MR. JUSTICE McREYNOLDS is of opinion that the effect of the assailed tax upon the instrumentality of the United States is remote and tax is valid under the doctrine in *Central Pac. R. R.* v. *California,* 162 U. S. 91, 119.

MR. JUSTICE BRANDEIS, dissenting.

The property taxed is lead and zinc ore in bins. The land from which the ore was extracted belongs to a Quapaw allottee under the Act of March 2, 1895, c. 188, 28 Stat. 876, 907. Restrictions on alienation of the land will not expire until 1946. Act of March 3, 1921, c. 119, § 26, 41 Stat. 1225, 1248. But the allottee may lease the land for mining and business purposes for ten years unless he is incompetent, in which case the power to lease is vested in the Secretary of the Interior. Act of June 7, 1897, c. 3, 30 Stat. 62, 72. The ore in question had been detached from the soil and is personal property. It is owned wholly by the Mining Company, a private Oklahoma corporation organized for profit. The ore is assessed under the general laws of the State which lays an *ad valorem* property tax on all property, real or personal, not exempt by law from taxation. Payment of the tax will not affect the financial return to the Indian under the lease. No state legislation exempts this property. There is no specific or general provision in any act of Congress which purports to do so. If an exemption exists, it arises directly from the Federal Constitution. Does ownership by an incompetent Indian of the land from which the ore was taken or ownership of the ore by an instrumentality of the Government create an exemption?

Is the ore exempt because it has been extracted out of restricted lands? The Quapaw might have conducted the mining operations himself. If he had been competent he might, without the approval of the Secretary of the Inte-

rior have leased the land to others for mining purposes for a period of ten years. If he had operated the mine himself, I see no ground on which it could be held that his ore in the bins would not have been taxable to him, like any other unrestricted property to which he had absolute title.[1] The fact that he was incompetent does not render such property exempt from taxation.[2] Such incompetency results simply in the imposition of restrictions upon the alienation of his realty, exempting that from taxation. *The Kansas Indians,* 5 Wall. 737. But such restrictions cannot by implication be deemed to extend to personalty, even though the product of the realty, so as to exempt them from taxation. Compare *McCurdy* v. *United States,* 246. U. S. 263; *United States* v. *Gray,* 284 Fed. 103; *United States* v. *Ransom,* 284 Fed. 108. Any exemption that attached to the land is limited thereto and does not extend to the ore extracted therefrom. *Forbes* v. *Gracey,* 94 U. S. 762, 765–766. Compare *South Utah Mines* v. *Beaver County,* 262 U. S. 325.

Is the ore exempt because it is the property of an agency employed by the Government for the benefit of the Indian, its ward? We are not dealing here with property owned by the United States as in *Van Brocklin* v. *Tennessee,* 117 U. S. 151, or *Lee* v. *Osceola, etc., Improvement District,* 268 U. S. 643; nor with an agency all of whose property was acquired and is used solely for the purpose of serving the Government as in *Clallam County* v. *United States,* 263 U. S. 341. We are dealing with a private " corporation having its own purposes as well as those of the United States and interested in profit

---

[1] *Pennock* v. *Commissioners,* 103 U. S. 44; *Goudy* v. *Meath,* 203 U. S. 146.

[2] *Keokuk* v. *Ulam,* 4 Okla. 5. The exemption granted the personalty of the Indians in *United States* v. *Rickerts,* 188 U. S. 432, and in *United States* v. *Pearson,* 231 Fed. 270, rested upon the express ground that title to the property was held by the United States in trust for the Indians.

on its own account," *ibid*, p. 345. And we are dealing with a property tax, as distinguished from an occupation tax. *Choctaw, Oklahoma & Gulf Ry. Co.* v. *Harrison,* 235 U. S. 292; *Oklahoma* v. *Texas,* 266 U. S. 298, 301. Whether, under the circumstances, Congress had power to exempt the ore from the general property tax, we need not consider. It has not done so in terms; and I see no reason for assuming that it intended to do so. Compare *Mid-Northern Oil Co.* v. *Montana,* 268 U. S. 45, 49; *Thompson* v. *Kentucky,* 209 U. S. 340; *Swarts* v. *Hamer,* 194 U. S. 441.

In 1873 this Court said: "It may, therefore, be considered as settled that no constitutional implications prohibit a State tax upon the property of an agent of the government merely because it is the property of such an agent." *Railroad Co.* v. *Peniston,* 18 Wall. 5, 33. The rule there applied with respect to a railroad incorporated under a federal charter has since been followed as to other federal instrumentalities also. *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Central Pacific Railroad Co.* v. *California,* 162 U. S. 91; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375; *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362; *Choctaw, Oklahoma & Gulf Ry. Co.* v. *Mackey,* 256 U. S. 531, 537. Compare *Thompson* v. *Pacific Railroad,* 9 Wall. 579; *National Bank* v. *Commonwealth,* 9 Wall. 353, 362. It has been specifically applied to agencies, such as this mining company, whose employment was in aid of the Government's policy of protecting and developing the properties of its Indian wards. *Thomas* v. *Gay,* 169 U. S. 264; *Wagoner* v. *Evans,* 170 U. S. 588; *Catholic Missions* v. *Missoula County,* 200 U. S. 118. Those decisions seem to me controlling in the case at bar.

The rule that the property of a privately owned government agency is not exempt from state taxation rests fundamentally upon the principle that such a tax has only a remote relation to the capacity of such agencie

efficiently to serve the Government.[3]   Such a tax, as dis-
tinguished from an occupation or privilege tax, does not
impose a charge upon the privilege of acting as a govern-
ment agent and thereby enable a State to control the
power of the Federal Government to employ agents and
the power of persons to accept such employment.   The
tax is levied as a charge by the State for rendering services
relating to the protection of the property, which services
are rendered alike to agents of the Government and of
private persons.   Such a tax cannot be deemed to be
capable of deterring the entry of persons as agents into
the employ of the Government.   Conceivably an operat-
ing company might pay a higher royalty or bonus if it
were assured that it would enjoy immunity from taxation
for the small quantity of the year's output of the mine
which might be in the ore bins on the day as of which
property is assessed.   Conceivably also, the cattle owner
in *Thomas* v. *Gay, supra*, might have paid higher for the
grazing rights if the cattle while on the reservation were
immune from taxation.   But, in either case, the effect
of the immunity, if any, upon the Indian's financial return
would be remote and indirect.   If we are to regard
realities we should treat it as negligible.

---

[3] " It is, therefore, manifest that exemption of Federal agencies
from State taxation is dependent, not upon the nature of the agents,
or upon the mode of their constitution, or upon the fact that they are
agents, but upon the effect of the tax; that is, upon the question
whether the tax does in truth deprive them of power to serve the
government as they were intended to serve it, or does hinder the
efficient exercise of their power.   A tax upon their property has no
such necessary effect.   It leaves them free to discharge the duties
they have undertaken to perform.   A tax upon their operations is a
direct obstruction to the exercise of Federal powers." *Railroad Co.*
v. *Peniston,* 18 Wall. 5, 36.   See T. R. Powell, " Indirect Encroach-
ment on Federal Authority by the Taxing Powers of the States," 31
Harvard Law Rev. 321, 327; J. H. Cohen and K. Dayton, " Federal
Taxation of State Activities and State Taxation of Federal Activities,"
34 Yale Law Journ. 807.

The difference in the legal effect of acts which are remote causes and of those which are proximate pervades the law. The power of a State to tax property and its lack of power to tax the occupation in which it is used exist in other connections. In *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375, 382, where the State had levied a tax upon property conveyed by the United States to the Shipbuilding Company on the condition that it construct a dry dock there for the use of the United States and that, if such dry dock were not kept in repair, the property should revert to the United States, this Court said: "But, furthermore, it seems to us extravagant to say that an independent private corporation for gain, created by a State, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time."

I suspect that my brethren would agree with me in sustaining this tax on ore in the bins but for *Gillespie* v. *Oklahoma,* 257 U. S. 501. The question there involved was different. Any language in the opinion which may seem apposite to the case at bar, should be disregarded as inconsistent with the earlier decisions. It is a peculiar virtue of our system of law that the process of inclusion and exclusion, so often employed in developing a rule, is not allowed to end with its enunciation and that an expression in an opinion yields later to the impact of facts unforeseen. The attitude of the Court in this respect has been especially helpful when called upon to adjust the respective powers of the States and the Nation in the field of taxation.[4]

---

[4] See *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, qualifying *Texas Co.* v. *Brown,* 258 U. S. 466; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642; *Ackren* v. *Continental Oil Co.,* 252 U. S. 444; *Standard Oil Co.* v. *Graves,* 249 U. S. 389; also *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, 226, qualifying *Maine* v.

*Grand Trunk Ry. Co.,* 142 U. S. 217; *Leloup* v. *Port of Mobile,* 127
U. S. 640, 647, qualifying *Osborne* v. *Mobile,* 16 Wall. 479; *Phila-
delphia S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, qualifying *State Tax
on· Railway Gross Receipts,* 15 Wall. 284; *Mercantile Bank* v. *New
York,* 121 U. S. 138, 147, qualifying *Boyer* v. *Boyer,* 113 U. S. 689;
*Railway Co.* v. *McShane,* 22 Wall. 444, qualifying *Railway Co.* v.
*Prescott,* 16 Wall. 603.  Compare *First Nat'l Bank of Guthrie Center*
v. *Anderson,* 269 U. S. 341, 348, explaining *Merchants' National Bank*
v. *Richmond,* 256 U. S. 635; *Texas Transpᵤrtation & Terminal Co.*
v. *New Orleans,* 264 U. S. 150, and *Crew Levick Co.* v. *Pennsylvania,*
245 U. S. 292, 296, limiting *Fecklin* v. *Shelby County Taxing District,*
145 U. S. 1; *Baltimore & Ohio Southwestern R. R. Co.* v. *Settle,* 260
U. S. 166, 173, qualifying *Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas,*
204 U. S. 403.