271 U.S. 609 (1926)
JAYBIRD MINING COMPANY
v.
WEIR, COUNTY TREASURER.
No. 293.
Supreme Court of United States.
Argued April 29, 1926.
Decided June 7, 1926.
ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.
*610 Mr. A. Scott Thompson, with whom Messrs. A.C. Wallace, Vern E. Thompson, and Ray McNaughton were on the brief, for plaintiff in error.
Mr. John H. Venable, with whom Messrs. A.L. Commons and Wm. H. Thomas were on the brief, for defendant in error.
*611 MR. JUSTICE BUTLER delivered the opinion of the Court.
The mining company sued in the District Court of Ottawa County to recover a tax of $2,319.80 paid under protest. The County Treasurer demurred to the petition asserting that it failed to state a cause of action. The demurrer was overruled, and judgment was given for the plaintiff. On appeal to the highest court of the State the *612 judgment was reversed. 104 Okla. 271. The case is here on writ of error. § 237, Judicial Code.
Briefly the facts are these. September 26, 1896, pursuant to the Act of March 2, 1895, c. 188, 28 Stat. 876, 907, there was issued to Hum-bah-wat-tah Quapaw, a Quapaw Indian, a patent for an allotment of 40 acres of land in Ottawa County. The patent contained restrictions against alienation for twenty-five years, and by the Act of March 3, 1921, c. 119, 41 Stat. 1225, 1248, that period was extended for an additional twenty-five years. The land is owned by the heirs of the allottee. The company has a mining lease on the restricted land on terms which provide for the payment of royalties or a percentage of the gross proceeds derived from the sale of ores mined. The amount sued for is an ad valorem tax assessed by the county officials under § 9814, Compiled Statutes of 1921, on lead and zinc ores mined by the company in 1920, and which were in its bins on the land January 1, 1921. This tax is in addition to a gross production tax paid to the State Auditor. It was assessed on the ores in mass; and the royalties or equitable interests of the Indians had not been paid or segregated. Prior to the production of the ores taxed, the Secretary of the Interior determined the Indian owners to be incapable of managing their property and assumed control of it in their behalf. Act of June 7, 1897, c. 3, 30 Stat. 62, 72. Since that time, the royalties have been paid directly to the Secretary.
The Quapaw Indians are under the guardianship of the United States. The land and Indian owners are bound by restrictions specified in the patent and the Acts referred to. It is the duty and established policy of the government to protect these dependents in respect of their property. The restrictions imposed are in furtherance of that policy. United States v. Noble, 237 U.S. 74; Goodrum v. Buffalo, 162 Fed. 817. The lessee is an *613 agency or instrumentality employed by the government for the development and use of the restricted land and to mine ores therefrom for the benefit of its Indian wards. Choctaw & Gulf R.R. v. Harrison, 235 U.S. 292. It is elementary that the federal government in all its activities is independent of state control. This rule is broadly applied. And, without congressional consent, no federal agency or instrumentality can be taxed by state authority. "With regard to taxation, no matter how reasonable, or how universal and undiscriminating, the State's inability to interfere has been regarded as established since McCulloch v. Maryland, 4 Wheat. 316." Johnson v. Maryland, 254 U.S. 51, 55. And see Farmers Bank v. Minnesota, 232 U.S. 516; Choctaw & Gulf R.R. v. Harrison, supra; Gillespie v. Oklahoma, 257 U.S. 501, 505.
This court has considered a number of cases quite like the one now before us. In Choctaw & Gulf R.R. v. Harrison, supra, there was an agreement by the United States that coal lands belonging in common to the members of the Choctaw and Chickasaw tribes should be mined, and that the royalties should be used for the Indians. The State imposed a tax equal to two per centum on the gross receipts from the total production of coal from the mine. It was held that it was an occupation or privilege tax, and that one having a mining lease made in furtherance of the governmental purpose could not be subjected to that burden. In Indian Oil Co. v. Oklahoma, 240 U.S. 522, it was held that oil leases of land made by the Osage tribe were under the protection of the federal government, and that the State could not tax such leases either directly or as represented by the capital stock of the corporation owning them. It was said (p. 530): "A tax upon the leases is a tax upon the power to make them, and could be used to destroy the power to make them. If they cannot be taxed as entities they cannot be taxed vicariously by taxing the stock, whose only value is their value, or *614 by taking the stock as an evidence or measure of their value, . .." In Howard v. The Oil Companies, 247 U.S. 503, this court affirmed, per curiam, the judgment of the United States District Court for the Western District of Oklahoma enjoining the enforcement of a tax imposed by the State on the gross value of the production of oil and gas, less the royalty interest, under leases upon Osage lands made for the benefit of the Indians. In Large Oil Co. v. Howard, 248 U.S. 549, this court reversed, per curiam, the judgment of the supreme court of Oklahoma (63 Okla. 143) sustaining a tax on gross value of production of petroleum and gas, less the royalty interest, where the owner of the property sought to be taxed was engaged under the authority of the Secretary of the Interior in the production of oil and gas in what formerly constituted the tribal lands of the Osage Nation. And in Gillespie v. Oklahoma, supra, it was held that the net income derived by a lessee from the sale of his share of the oil and gas received under leases of restricted Creek and Osage lands could not be taxed by the State. In each of these cases the tax was condemned as an attempt to tax an instrumentality used by the United States in fulfilling its duties to the Indians.
In this case the lease was made to secure the development of the lands and obtain for the benefit of the restricted Indian owners a percentage of the gross proceeds of the ores to be mined. The ad valorem tax here in controversy was assessed on the ores in mass at the mine before sale, and that was an attempt to tax an agency of the federal government within the principle of the cases cited.
From abundance of caution the company presented a petition for a writ of certiorari; but, as a writ of error lies, the petition will be denied. Gillespie v. Oklahoma, supra, 506.
Judgment reversed.
*615 MR. JUSTICE McREYNOLDS is of opinion that the effect of the assailed tax upon the instrumentality of the United States is remote and tax is valid under the doctrine in Central Pac. R.R. v. California, 162 U.S. 91, 119.
MR. JUSTICE BRANDEIS, dissenting.
The property taxed is lead and zinc ore in bins. The land from which the ore was extracted belongs to a Quapaw allottee under the Act of March 2, 1895, c. 188, 28 Stat. 876, 907. Restrictions on alienation of the land will not expire until 1946. Act of March 3, 1921, c. 119, § 26, 41 Stat. 1225, 1248. But the allottee may lease the land for mining and business purposes for ten years unless he is incompetent, in which case the power to lease is vested in the Secretary of the Interior. Act of June 7, 1897, c. 3, 30 Stat. 62, 72. The ore in question had been detached from the soil and is personal property. It is owned wholly by the Mining Company, a private Oklahoma corporation organized for profit. The ore is assessed under the general laws of the State which lays an ad valorem property tax on all property, real or personal, not exempt by law from taxation. Payment of the tax will not affect the financial return to the Indian under the lease. No state legislation exempts this property. There is no specific or general provision in any act of Congress which purports to do so. If an exemption exists, it arises directly from the Federal Constitution. Does ownership by an incompetent Indian of the land from which the ore was taken or ownership of the ore by an instrumentality of the Government create an exemption?
Is the ore exempt because it has been extracted out of restricted lands? The Quapaw might have conducted the mining operations himself. If he had been competent he might, without the approval of the Secretary of the Interior *616 have leased the land to others for mining purposes for a period of ten years. If he had operated the mine himself, I see no ground on which it could be held that his ore in the bins would not have been taxable to him, like any other unrestricted property to which he had absolute title.[1] The fact that he was incompetent does not render such property exempt from taxation.[2] Such incompetency results simply in the imposition of restrictions upon the alienation of his realty, exempting that from taxation. The Kansas Indians, 5 Wall. 737. But such restrictions cannot by implication be deemed to extend to personalty, even though the product of the realty, so as to exempt them from taxation. Compare McCurdy v. United States, 246 U.S. 263; United States v. Gray, 284 Fed. 103; United States v. Ransom, 284 Fed. 108. Any exemption that attached to the land is limited thereto and does not extend to the ore extracted therefrom. Forbes v. Gracey, 94 U.S. 762, 765-766. Compare South Utah Mines v. Beaver County, 262 U.S. 325.
Is the ore exempt because it is the property of an agency employed by the Government for the benefit of the Indian, its ward? We are not dealing here with property owned by the United States as in Van Brocklin v. Tennessee, 117 U.S. 151, or Lee v. Osceola, etc., Improvement District, 268 U.S. 643; nor with an agency all of whose property was acquired and is used solely for the purpose of serving the Government as in Clallam County v. United States, 263 U.S. 341. We are dealing with a private "corporation having its own purposes as well as those of the United States and interested in profit *617 on its own account," ibid, p. 345. And we are dealing with a property tax, as distinguished from an occupation tax. Choctaw, Oklahoma & Gulf Ry. Co. v. Harrison, 235 U.S. 292; Oklahoma v. Texas, 266 U.S. 298, 301. Whether, under the circumstances, Congress had power to exempt the ore from the general property tax, we need not consider. It has not done so in terms; and I see no reason for assuming that it intended to do so. Compare Mid-Northern Oil Co. v. Montana, 268 U.S. 45, 49; Thompson v. Kentucky, 209 U.S. 340; Swarts v. Hamer, 194 U.S. 441.
In 1873 this Court said: "It may, therefore, be considered as settled that no constitutional implications prohibit a State tax upon the property of an agent of the government merely because it is the property of such an agent." Railroad Co. v. Peniston, 18 Wall. 5, 33. The rule there applied with respect to a railroad incorporated under a federal charter has since been followed as to other federal instrumentalities also. Western Union Tel. Co. v. Massachusetts, 125 U.S. 530; Central Pacific Railroad Co. v. California, 162 U.S. 91; Baltimore Shipbuilding Co. v. Baltimore, 195 U.S. 375; Gromer v. Standard Dredging Co., 224 U.S. 362; Choctaw, Oklahoma & Gulf Ry. Co. v. Mackey, 256 U.S. 531, 537. Compare Thompson v. Pacific Railroad, 9 Wall. 579; National Bank v. Commonwealth, 9 Wall. 353, 362. It has been specifically applied to agencies, such as this mining company, whose employment was in aid of the Government's policy of protecting and developing the properties of its Indian wards. Thomas v. Gay, 169 U.S. 264; Wagoner v. Evans, 170 U.S. 588; Catholic Missions v. Missoula County, 200 U.S. 118. Those decisions seem to me controlling in the case at bar.
The rule that the property of a privately owned government agency is not exempt from state taxation rests fundamentally upon the principle that such a tax has only a remote relation to the capacity of such agencies *618 efficiently to serve the Government.[3] Such a tax, as distinguished from an occupation or privilege tax, does not impose a charge upon the privilege of acting as a government agent and thereby enable a State to control the power of the Federal Government to employ agents and the power of persons to accept such employment. The tax is levied as a charge by the State for rendering services relating to the protection of the property, which services are rendered alike to agents of the Government and of private persons. Such a tax cannot be deemed to be capable of deterring the entry of persons as agents into the employ of the Government. Conceivably an operating company might pay a higher royalty or bonus if it were assured that it would enjoy immunity from taxation for the small quantity of the year's output of the mine which might be in the ore bins on the day as of which property is assessed. Conceivably also, the cattle owner in Thomas v. Gay, supra, might have paid higher for the grazing rights if the cattle while on the reservation were immune from taxation. But, in either case, the effect of the immunity, if any, upon the Indian's financial return would be remote and indirect. If we are to regard realities we should treat it as negligible.
*619 The difference in the legal effect of acts which are remote causes and of those which are proximate pervades the law. The power of a State to tax property and its lack of power to tax the occupation in which it is used exist in other connections. In Baltimore Shipbuilding Co. v. Baltimore, 195 U.S. 375, 382, where the State had levied a tax upon property conveyed by the United States to the Shipbuilding Company on the condition that it construct a dry dock there for the use of the United States and that, if such dry dock were not kept in repair, the property should revert to the United States, this Court said: "But, furthermore, it seems to us extravagant to say that an independent private corporation for gain, created by a State, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time."
I suspect that my brethren would agree with me in sustaining this tax on ore in the bins but for Gillespie v. Oklahoma, 257 U.S. 501. The question there involved was different. Any language in the opinion which may seem apposite to the case at bar, should be disregarded as inconsistent with the earlier decisions. It is a peculiar virtue of our system of law that the process of inclusion and exclusion, so often employed in developing a rule, is not allowed to end with its enunciation and that an expression in an opinion yields later to the impact of facts unforeseen. The attitude of the Court in this respect has been especially helpful when called upon to adjust the respective powers of the States and the Nation in the field of taxation.[4]
NOTES
[1] Pennock v. Commissioners, 103 U.S. 44; Goudy v. Meath, 203 U.S. 146.
[2] Keokuk v. Ulam, 4 Okla. 5. The exemption granted the personalty of the Indians in United States v. Rickerts, 188 U.S. 432, and in United States v. Pearson, 231 Fed. 270, rested upon the express ground that title to the property was held by the United States in trust for the Indians.
[3] "It is, therefore, manifest that exemption of Federal agencies from State taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of Federal powers." Railroad Co. v. Peniston, 18 Wall. 5, 36. See T.R. Powell, "Indirect Encroachment on Federal Authority by the Taxing Powers of the States," 31 Harvard Law Rev. 321, 327; J.H. Cohen and K. Dayton, "Federal Taxation of State Activities and State Taxation of Federal Activities," 34 Yale Law Journ. 807.
[4] See Sonneborn Bros. v. Cureton, 262 U.S. 506, qualifying Texas Co. v. Brown, 258 U.S. 466; Bowman v. Continental Oil Co., 256 U.S. 642; Askren v. Continental Oil Co., 252 U.S. 444; Standard Oil Co. v. Graves, 249 U.S. 389; also Galveston, Harrisburg & San Antonio Ry. Co. v. Texas, 210 U.S. 217, 226, qualifying Maine v. Grand Trunk Ry. Co., 142 U.S. 217; Leloup v. Port of Mobile, 127 U.S. 640, 647, qualifying Osborne v. Mobile, 16 Wall. 479; Philadelphia S.S. Co. v. Pennsylvania, 122 U.S. 326, qualifying State Tax on Railway Gross Receipts, 15 Wall. 284; Mercantile Bank v. New York, 121 U.S. 138, 147, qualifying Boyer v. Boyer, 113 U.S. 689; Railway Co. v. McShane, 22 Wall. 444, qualifying Railway Co. v. Prescott, 16 Wall. 603. Compare First Nat'l Bank of Guthrie Center v. Anderson, 269 U.S. 341, 348, explaining Merchants' National Bank v. Richmond, 256 U.S. 635; Texas Transportation & Terminal Co. v. New Orleans, 264 U.S. 150, and Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 296, limiting Fecklin v. Shelby County Taxing District, 145 U.S. 1; Baltimore & Ohio Southwestern R.R. Co. v. Settle, 260 U.S. 166, 173, qualifying Gulf, Colorado & Santa Fe Ry. Co. v. Texas, 204 U.S. 403.