GRAYBURG OIL CO. v. STATE. (No. 1074–4709.)*

Commission of Appeals of Texas, Section A. March 7, 1928.

1. Licenses 16(9)—Corporation producing and selling gasoline held "wholesaler," within Gasoline Sales Tax Statute (Gasoline Sales Tax Statute).

Corporation generally engaged in the production and sale of gasoline held a "wholesaler," within the meaning of the Gasoline Sales Tax Statute (Rev. St. 1925, art. 7065).

[Ed. Note.—For other definitions, see Words and Phrases, Wholesaler.]

2. Licenses 16(9)—Gasoline tax of 1 cent per gallon sold held occupational excise, and not tax on gasoline itself (Gasoline Sales Tax Statute).

Tax under Gasoline Sales Tax Statute (Rev. St. 1925, art. 7065), requiring every person selling at wholesale in intrastate commerce to pay tax of 1 cent per gallon sold, held excise, and not tax on gasoline itself.

3. Licenses 16(9)—Gasoline tax of 1 cent per gallon sold held to be commutative tax, in view of statutes (Gasoline Sales Tax Statute; Rev. St. 1925, arts. 7098–7116).

Tax under Gasoline Sales Tax Statute (Rev. St. 1925, art. 7065), requiring all wholesalers in intrastate commerce to pay tax of 1 cent per gallon of gasoline sold, held to be commutative tax, since Rev. St. 1911, arts. 7407–7426 (Rev. St. 1925, arts. 7098–7116), do not provide for ad valorem taxation of going concern values of companies engaged in production and sale of gasoline, and article 7426 (Rev. St. 1925, art. 7116) declares that companies upon whose intangibles ad valorem taxes are paid shall be relieved from liability to pay occupation taxes measured by gross receipts.

4. Taxation 6—That company sold gasoline to United States government held not to make it instrumentality of United States so as not to be subject to gasoline sales tax (Gasoline Sales Tax Statute).

That company engaged in production and sale of gasoline sold gasoline to United States held not to make company instrumentality of United States so as not to be subject to tax of 1 cent per gallon sold, under Gasoline Sales Tax Statute (Rev. St. 1925, art. 7065).

5. Commerce 40(1)—That gasoline sold to United States was delivered on military reservation held not to make sales transactions in foreign or interstate commerce so state tax based thereon was not on sale in commerce (Gasoline Sales Tax Statute).

That gasoline sold to United States was delivered on military reservation held not to make sales transactions in foreign or interstate commerce, where company's place of business and the military reservation were both within territorial boundaries of county within the state, and hence tax under Gasoline Sales Tax Statute (Rev. St. 1925, art. 7065) was not a tax laid or based upon sales in interstate commerce.

6. Commerce 64—State held to have power to impose gasoline sale tax of 1 cent per gallon sold in intrastate commerce, including amount sold United States (Gasoline Sales Tax Statute).

State held to have power to impose tax under Gasoline Sales Tax Statute (Rev. St. 1925, art. 7065) of 1 cent per gallon sold in intrastate commerce, including amount sold to United States and delivered on military reservation within the state.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the State of Texas against the Grayburg Oil Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals, Third District (286 S. W. 489), and defendant brings error. Affirmed.

Victor Keller, of San Antonio, for plaintiff in error.

Dan Moody, former Atty. Gen., and Ernest May, former Asst. Atty. Gen., and Claude Pollard, Atty. Gen., and D. A. Simmons, Asst. Atty. Gen., for the State.

NICKELS, J.  Grayburg Oil Company is a Texas corporation generally engaged in the production and sale of gasoline. Its principal place of business and its refinery are located in Bexar county, outside the military reservation of Ft. Sam Houston. It has been engaged in said business continuously since some years prior to the period in question. Included in its sales made and consummated in Bexar county during the period in question were 1,201,400 gallons of gasoline sold to the United States, delivered to the purchaser on the military reservation, and for consumption within the state (inclusive of the reservation).

The corporation, of course, is subject to ad valorem taxation as other citizens and corporations, except that it is not subject to that species of taxation in respect to its "intangibles" or "going concern values" (articles 7098–7116, R. S. 1925; articles 7407–7420, R. S. 1911); and it is subject to "franchise" taxation (articles 7084–7097, R. S. 1925; articles 7393–7406, R. S. 1911).

[1] The corporation, in respect to the business mentioned (inclusive of that done with the United States), is a "wholesaler," within the meaning of the so-called gasoline sales tax statute. State v. Pioneer Oil & Refining Co. (Tex. Com. App.) 292 S. W. 869. The statute in force during the period in question (now article 7065, R. S. 1925, etc.) required "every person selling at wholesale in intrastate commerce in this state" to "pay to the state * * * an occupation tax equal to one cent per gallon of all such gasoline so sold by such person," etc. The amount of taxes accruing in virtue of that statute was duly paid, except that from the amount a sum equal to 1 cent per gallon for the 1,201,400 gallons sold to the United States was excluded. For the sum thus excluded, with penalties and interest, the state sued; recovery of penalties was denied, but judgment for the sum, with interest, aggregating $13,-207.30, was allowed. The judgment was affirmed by the Honorable Court of Civil Appeals, Third District. 286 S. W. 489. To the opinion of affirmance reference is made for a more complete statement of the case.

These defenses were seasonably made, preserved, and advanced to the Supreme Court: (a) In respect to the 1,201,400 gallonage sales, the corporation was an agency or instrumentality of the United States, and (b) those sales (because delivery was made upon, and for consumption at least in part within, the military reservation) were in interstate commerce; in consequence, it is said, no tax could be laid or based thereon pursuant to state authority.

[2, 3] 1. The tax in question has two important characteristics. (a) It is an occupational excise. Pullman Co. v. State, 64 Tex. 274, 53 Am. Rep. 758; State v. G. H. & S. A. Ry. Co., 100 Tex. 153, 97 S. W. 71, reversed in G. H. & S. A. Ry. Co. v. State, 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031; Maine v. Grand Trunk Ry., 142 U. S. 217, 12 S. Ct. 121, 163, 35 L. Ed. 994; State Tax on Railway Gross Receipts, 15 Wall. 284, 21 L. Ed. 164; Choctaw, O. & G. Ry. Co. v. Harrison, 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234. That is the nature given it in the words of the law; and, while nomenclature cannot give character in defiance of fact (G., H. & S. A. Ry. Co. v. Texas, 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031), naught is exhibited in the statute, the conditions of its enactment or in the effect (so far as it may be judged) to warrant any thought that use of gallonage as a mere measure of the exaction was not done in good faith rather than in a covert effort to impose a burden on the gasoline itself, the proceeds of the sales thereof, or on the purchasers. That a state may thus measure an occupation tax, even when interstate transactions are taken into account, has full recognition in G., H. & S. A. Ry. Co. v. Texas, supra. See, for analogies, Plumber v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998; Hamilton Mfg. Co. v. Mass., 6 Wall. 632, 18 L. Ed. 904; Home Ins. Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 33 L. Ed. 1025; Society for Savings v. Coite, 6 Wall. 594, 18 L. Ed. 897; Provident Sav. Trust v. Mass., 6 Wall. 611, 18 L. Ed. 907. (b) It is commutative. The right of a state to tax going concern values is generally admitted. G., H. & S. A. Ry. Co. v. Texas, supra. As noted, provision is made for ad valorem taxation of such values ("intangibles") owned by railroad companies and companies doing various other kinds of business, but not as owned by companies doing the business in which Grayburg Oil Company was and is engaged; and by the expressed terms of article 7116, R. S. 1925 (article 7426, R. S. 1911) it is declared that a company, individual, etc., upon whose "intangibles" ad valorem taxes are paid, shall be "relieved from liability for and from payment of any and all occupation taxes measured by gross receipts." The so-called "occupation tax" undertaken to be levied on railway operators in the statute considered in G., H. & S. A. Ry. Co. v. State, supra, did not include this quality, and its absence, no doubt, had much to do with the conclusion that the statute, though nominally one for levy of an occupation tax, had in truth a different purpose and effect.

[4] 2. In respect to that gasoline whose quantity made up one of the factors for calculation of the amount of the tax, Grayburg Oil Company was seller and the United States was purchaser. The seller (a Texas corporation) had no relation with the federal

government save that created in the agreements for the sales mentioned. It "lives and moves and has its being" beyond the field occupied by federal agencies such as appeared in McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Railway Co. v. Peniston, 18 Wall. 5, 21 L. Ed. 787; and California ·v. Central Pac. Ry. Co., 127 U. S.\ 1, 8 S. Ct. 1073, 32 L. Ed. 150. So far as thought relevant, the general effect of those cases is thus summed in Flint v. Stone Tracy Co., 220 U. S. 107, 152, 31 S. Ct. 342, 349, 55 L. Ed. 389, 414 (Ann. Cas. 1912B, 1312):

"It has been held * * * that the state cannot tax franchises created by the United States or the agencies or corporations which are created for the purpose of carrying out governmental functions of the United States."

Cases like those cited (in principle) are Choctaw, O. & G. Ry. Co. v. Harrison, supra, and Indian Terr. Ill. Co. v. Oklahoma, 240 U. S. 522, 36 S. Ct. 453, 60 L. Ed. 779. The tax involved in Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067, was a named amount "for every message sent" (460), and it amounted to a "specific tax on each message" (465) even though "sent by public officers on business of the United States" and received and conveyed by a corporation organized in virtue of congressional enactment with the expressed purpose (inter alia) of being "a government agent for the transmission of messages on public business" (464); whereas, Grayburg Oil Company derived no franchise from the United States, occupied no relation (save that of vendor) to the United States and the exaction was upon the occupation of the seller (broader than supplying the United States) and not upon the commodities sold. In Telegraph Co. v. Texas there is obvious recognition that the corporation ("government agent" aforesaid) may lawfully be taxed by a state in "a proper way on account of its occupation and business." When the grounds upon which these decisions (and others cited to the point) rest are kept in mind, the cases may be taken as authorities against the proposition asserted by plaintiff in error. See, also, Fidelity & Deposit Co. v. Maryland, 240 U. S. 319, 36 S. Ct. 398, 60 L. Ed. 664; Metcalf v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384.

[5] 3. The company's place of business, refinery, and storage (principal locus of user of its franchises), as noted, are within Bexar county and outside the military reservation; the reservation (point of delivery) is within that county; the route of movement between the two sites is wholly within that county; and the county is within the state. So far as territory may control the nature of commerce, interstate commerce is an obvious impossibility, as is foreign commerce. Whatever development there may be in the future, the present concept (resting upon state and national boundaries) includes no more than intrastate, interstate, and foreign commerce. The sales in question necessarily belong in the first category, for they could not have place in either of the others; this, in consequence of impotency in the Governor's "cession" of jurisdiction to convert the land now comprising the military reservation into a new state or a foreign country.

It results, in our opinion, that the tax claimed is within the letter of .the statute; and a contending spirit or other potent factor does not appear to reform the language used by the lawmakers so as to work exclusion.

[6] 4. The power thus to include an amount ascertained by reference to gallonage of sales to the United States, we think, cannot be doubted, when the nature and effect of the tax as postured in the record and described in "1" above are kept in mind. This would seem to have warrant in Telegraph Co. v. Texas, supra, even if Grayburg Oil Company were a federal agency, and in G., H. & S. A. Ry. Co. v. Texas, supra (and cases therein cited), even· if the commerce in which the sales happened were interstate; negation is not to be found in Choctaw, O. & G. Ry. Co. v. Harrison, supra, for the state's effort there was to tax a business confined to performance of governmental duty as delegated, or in Indian Terr. Ill. Oil Co. v. Oklahoma wherein a tax assessed upon the governmental contract itself (as property) was stricken down.

5. We recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. The judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.