## RATTA v. HEALY, Chief of Police.
### No. 222.

District Court, D. New Hampshire.
Nov. 3, 1932.

Demond, Woodworth, Sulloway & Rogers, of Concord, N. H., for complainant.

H. Thornton Lorimer, Asst. Atty. Gen., for respondent.

Before BINGHAM, Circuit Judge, and MORRIS and LETTS, District Judges.

LETTS, District Judge.

This is a bill in equity brought by Louis D. Ratta, a resident of Springfield, Mass., to enjoin the chief of police of the city of Manchester, N. H., from interfering with canvassers employed in selling vacuum cleaners from house to house in Manchester. The action calls in question the constitutionality of the New Hampshire "hawkers and peddlers" statute.

The complainant, whose home office is in the city of Springfield, purchases under contract from the manufacturer a certain household vacuum cleaner, and has for his territory for distribution the states of New Hampshire, Vermont, and part of Massachusetts. His method of selling has been that of employing canvassers on a commission basis who sell from house to house, delivering the utensil then and there, if sold. In the city of Manchester, the respondent has undertaken to prevent the complainant's canvassers from selling the article in the manner described unless and until such canvassers obtain licenses under the New Hampshire act relating to "hawkers and peddlers."

Sections 2 and 3 of the act provide as follows:

"2. *Prohibition; Penalty.* No hawker or peddler shall sell or barter or carry for sale or barter, or expose therefor, any goods, wares or merchandise, unless he holds a license so to do as herein provided. Any person violating this section shall be fined not more than two hundred dollars, to be equally divided between the state and the town in which the offense was committed. Such sums as may be paid into the state treasury as penalties shall be credited to the secretary of state for his use in the enforcement of this chapter.

"3. *Exceptions.* The provisions of this chapter relating to hawkers and peddlers shall not apply to wholesalers or jobbers selling to dealers only, nor to commercial agents or other persons selling by sample, lists, or catalogues, nor to any person selling provisions, agricultural implements, fruit trees, vines, shrubs, books, newspapers, pamphlets, the products of his own labor or the labor of his family and the product of his own farm or the one which he tills, the manufacturers of furniture and ladders excepted."

Sections 7 and 8 fix the amount of the license fee required and make provision for both local and state-wide licenses, limiting the duration thereof to one year.

Section 11 provides as follows: "11. *Persons Exempt.* Any soldier or sailor disabled in any war in which the United States has been engaged, or by sickness or disability contracted therein or since his discharge from the service because of such service, and the widow of any such soldier or sailor so long as she remains unmarried, or any citizen of this state over seventy years of age, shall be exempt from paying the license fees required by this chapter."

The complainant contends that the entire statute is unconstitutional because of contravening provisions of article 4, § 2, of the Constitution of the United States, and article 14 of the Amendments thereto.

The respondent at the outset has challenged the jurisdiction of this court, first, on the ground that the amount in controversy is insufficient to vest jurisdiction because of diversity of citizenship; and, second, for lack of jurisdiction in equity. It is contended that individual canvassers would have an adequate remedy at law in the opportunity to raise the constitutional questions here presented by way of defense in event of prosecution under the act. It is unnecessary to here indulge in an extended labor of either of these points. The evidence establishes that there is a threatened interference with the complainant's business wherein property rights are involved. It is well established that equity has jurisdiction under such circumstances to enjoin the prosecution of a criminal suit if the act under which such prosecution be threatened is unconstitutional. Terrace v. Thompson, 263 U. S. 197, 214, 215, 44 S. Ct. 15, 68 L. Ed. 255; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596.

■ It is also well settled that in determining whether there be involved the necessary jurisdictional amount of $3,000, exclusive of interest and costs, any recurring or continuing expense should be capitalized. Western & Atlantic R. R. v. Railroad Commission, 261 U. S. 264, 267, 43 S. Ct. 252, 67 L. Ed. 645; Packard v. Banton, 264 U. S. 140, 141, 44 S. Ct. 257, 68 L. Ed. 596, supra.

■ In this case it is clear from the testimony that an enforcement of the provisions of the act, by requiring the individual canvassers to take out licenses and pay the fees provided under the statute, would confront the complainant with the alternative of either abandoning his business as now carried on in the city of Manchester or himself assuming the burden of paying the license fees for many, if not most, of those employed. The testimony establishes that many of these men are without adequate means or would be reluctant to undertake the employment if the license fee by them had to be paid.

The abandonment of the complainant's business would clearly involve property rights of a value in excess of the jurisdictional amount, and, were he to pay the license fees in order to continue his business, it would entail an expenditure of at least $300 per year which, if capitalized at 5 per cent., would amount to $6,000.

There alone remains for consideration the question of the constitutionality of the legislation. This must be examined from the point of view of its validity as an exercise of the police power and not as a revenue or tax measure. State v. U. S. & C. Express Co., 60 N. H. 219.

■ We are not concerned with the general question of the right of the state to require all itinerant vendors under reasonable restrictions and regulations to be licensed. It is well settled that the state may assert such authority where such regulation involves no discrimination, as between individuals or the origin of the merchandise to be sold. In the case of Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430, Mr. Justice Gray, although dealing specifically with the application of the commerce clause, reviews historically the assertion and recognition of this power. The question before us is, whether the New Hampshire statute is void because of the discriminatory character of certain of its provisions.

■ Two sections or clauses of the Constitution of the United States restrict the power of the states to discriminate in the application of the so-called police power. The first of these is section 2 of article 4 of the original Constitution. It declares "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." This provision restricts the state (except under special circumstances) from discriminating against the citizens of a sister state in favor of its own citizens.[1] The Supreme Court of New Hampshire has over a long period consistently applied this constitutional principle in respect to legislation in that state. In the case of State v. Lancaster (1884) 63 N. H. 267, 270, the court held that a statute requiring citizens of other states to procure a license to sell trees, shrubs, etc., which could be sold by the citizens of New Hampshire without a license was in conflict with article 4, § 2, of the Constitution of the United States, and again in the case of State v. Wiggin (1888) 64 N. H. 508, 15 A. 128, 1 L. R. A. 56, the court had before it a statute relating to licenses for the sale of lightning rods. This statute required the payment of a fee of $500 by citizens of other states while permitting such license to be granted for a fee of $100 to one who had been a citizen of New Hampshire for five years. In a brief opinion by Bingham, J., he concluded, "and in this respect the citizens of other states are not given the privileges and immunities of citizens of this state," holding that the act was in violation of article 4, § 2. See, also, Commonwealth v. Hana, 195 Mass. 262, 81 N. E. 149, 11 L. R. A. (N. S.) 799, 122 Am. St. Rep. 251, 11 Ann. Cas. 514.

■ In the present case the provisions of the New Hampshire "hawkers and peddlers" statute discriminate in favor of citizens of New Hampshire in but one respect. Section 11, entitled "Persons Exempt," provides, "or any citizen of this state over seventy years of age." Under this provision a citizen of New Hampshire, if 70 years of age, can sell merchandise as a canvasser or peddler within the state of New Hampshire without paying a license fee, whereas a citizen of any other state, of the same age, would be unable to do so. While this particular provision of the act is seemingly of no great practical importance, as few persons of that age would be engaging in such employment, it does nevertheless encroach upon the clear prohibition of article 4, § 2. The Constitution, in respect to safeguarding the equality of privileges and immunities between citizens of the several states, does not recognize or

[1] This interpretation is qualified when applied to foreign corporations.

permit of any encroachment predicated upon such a basis or excuse.

The second provision of the Constitution against discrimination in the exercise of the police power by a state is to be found in section 1 of the Fourteenth Amendment: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The provisions of the above-quoted section, in so far as they relate to the abridgement of the privileges or immunities of citizens and the provision containing the due process clause, apply to all, wherever domiciled. The equal protection clause, however, relates only to persons within the jurisdiction of the given state. In the present case, as the complainant is a resident of the state of Massachusetts, it would seem that the only provisions of section 1 of this amendment which he can invoke in challenging the constitutionality of the statute are the due process clause and the privileges and immunities clause. By the standard of these two clauses, we will consider the provisions of section 3 of the New Hampshire act and the further exemptions included in section 11.

No useful purpose would be served by undertaking to define privileges and immunities as used in that clause of the amendment or in distinguishing the scope of application of that clause from the due process clause. They are supplemental provisions overlapping and interrelated. The clear intendment of section 1 of the amendment is to protect persons in the enjoyment of those rights which by long usage and custom have come to be looked upon as fundamental, and to safeguard them against unreasonable and arbitrary invasion by state action. The Supreme Court has on numerous occasions refrained from dissecting section 1 into separate inhibitions, and has looked upon the section as an intrasupplementing whole.

In the case of Duncan v. Missouri, 152 U. S. 377, 382, 14 S. Ct. 570, 571, 38 L. Ed. 485, the court said: "But the privileges and immunities of citizens of the United States protected by the fourteenth amendment are privileges and immunities arising out of the nature and essential character of the federal government, and granted or secured by the constitution; and due process of law and the equal protection of the laws are secured

if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government. * * *"

Again in the case of Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721, 723, 37 L. Ed. 599, Mr. Chief Justice Fuller, speaking for the court, in part said: "The amendment does not take from the states those powers of police that were reserved at the time the original constitution was adopted. Undoubtedly it forbids any arbitrary deprivation of life, liberty or property, and secures equal protection to all, under like circumstances, in the enjoyment of their rights. * * * And due process of law, within the meaning of the amendment, is secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government."

In the case of Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 559, 22 S. Ct. 431, 439, 46 L. Ed. 679, the court, in reaffirming the doctrine of an earlier decision (Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923) said: "We have also said: 'The 14th Amendment, in declaring that no state "shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," undoubtedly intended, not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offences.'"

A specific application of these principles was made by the Illinois Supreme Court in the case of Marallis et al. v. City of Chicago et al., 182 N. E. 394, 398, June 24, 1932, reported in The United States Daily July 13, 1932. The court held an act of the Legislature to be unconstitutional which would

exempt from obtaining a hawkers' and peddlers' license all former soldiers and sailors of the United States who had been honorably discharged from service. The court, in an extended opinion wherein are assembled numerous authorities, observed in respect to the attempted classification: "The soldier or sailor, after his discharge, returned to civil life, became a part of the community in which he lived and enjoyed the same rights and was subjected to the same burdens as other citizens similarly circumstanced legally in the same jurisdiction." See, also, recent case Fuller Brush Co. v. Town of Green River (D. C.) 60 F.(2d) 613.

 In examining the act now before us we find it replete with the most arbitrary of attempted classifications and exemptions. Under the provisions of section 3 of the act, the itinerant canvasser may sell from house to house any kind of merchandise without a license if he uses only a sample or catalogue, making the delivery on another occasion; but, if he sells an article not included among those exempt, such as a vacuum cleaner, and delivers at the time the very utensil which has been demonstrated to the customer, it is necessary for him to obtain a peddlers' license. Without a license one may peddle provisions which would presumably include foodstuffs and groceries, but may not without a license sell and deliver at the time bathroom fixtures, tooth brushes, or combs. He may without a license, as provided in section 3, peddle fruit trees, vines, and shrubs, but to peddle fir trees, onion sets or annual plants for the garden, if not the product of his own farm, he must have a license. One may by his own labor, or that of his family, make wheelbarrows and hand sleds and vend them without a license, but to peddle a porch chair or ladder a license must first be obtained. One may make children's toys or other articles and sell them without restriction, but if he were to purchase the same class of articles from a neighbor, he could not peddle them unlicensed.

Under the provisions of section 11 of the act, not exempting from the necessity of obtaining a license, but providing exemptions from the necessity of paying a fee for the license, we find that the widow of a soldier or sailor need pay no fee, but that a widow of a mechanic would be required to pay the exaction. The citizen of New Hampshire, 70 years of age, is required to pay no fee, but the citizen of Massachusetts desiring to peddle in New Hampshire, though more than 70 years of age, must pay the license fee, as well as the individual 69 years of age wherever he may chance to reside. These suffice to illustrate the wholly unreasonable and arbitrary character of the classifications attempted under the provisions of both section 3 and section 11 of the statute. They bear no relation whatever to the proper object or subject-matter of such legislation, namely, the protection of the public. They result in an arbitrary and unequal application of restrictions to persons in legal status similarly circumstanced.

 There is in respect to this legislation no occasion to apply the doctrine that, if different sections of a statute are independent of each other, that which is unconstitutional may be disregarded and unobjectionable provisions enforced. To invoke that principle here would necessitate striking out sections 3 and 11, wherein the Legislature has specifically expressed an intent that certain classes of persons shall not be required to pay a fee and in section 3 that persons selling certain classes of merchandise shall not be required to obtain a license. This court cannot disregard these sections without the resulting effect of imposing the burden of obtaining licenses and the burden of paying fees upon certain classes that the Legislature has declared shall not be required so to do. The result is that the statute must be regarded as an entirety, and in that view must be adjudged to be unconstitutional and therefore void.

Consistent with these conclusions, the prayer of the complainant will be sustained. Findings, conclusions, and a decree may be submitted for settlement and entry, including an award of costs to the complainant and reserving to the respondent his proper exceptions.