## GYPSY OIL CO. v. OKLAHOMA TAX COMMISSION et al.[1]
### No. 925.

District Court, N. D. Oklahoma.
Feb. 19, 1934.

---

**1** Probable jurisdiction noted by Supreme Court 54 S. Ct. 564, 78 L. Ed. ——.

James B. Diggs, of Tulsa, Okl. (W. C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, all of Tulsa, Okl., on the brief), for complainant.

C. W. King, of Oklahoma City, Okl., for defendants.

Before McDERMOTT, Circuit Judge, and KENNEDY and KENNAMER, District Judges.

McDERMOTT, Circuit Judge.

█ Plaintiff seeks to enjoin the enforcement of the act of the Oklahoma Legislature of April 10, 1933 (chapter 132, S. L. 1933) in so far as it attempts to impose a tax of ⅛th of a cent per barrel on oil produced under leases made with the Osage Tribe of Indians. The bill alleging that the act contravened the Federal Constitution in that it undertook to tax an agency of the federal government, and a preliminary injunction being prayed for, a statutory court of three Judges was assembled as provided by section 266 of the Jud. Code, 28 USCA § 380. Upon that hearing, it was stipulated by counsel that, aside from conclusions, the plaintiff's bill stated the facts, and the cause was submitted as on final hearing. A motion to dismiss the bill is contained in the answer, later filed; and while the answer contains a qualified general denial, such denial may be disregarded, in view of the stipulation of counsel at the hearing, and in view of Equity Rule 30 (28 USCA § 723), forbidding general denials. The answer raising no issue of fact, and both parties disclaiming the necessity of proof, the case stands for final decree on the facts well pleaded in plaintiff's bill.

Section 1 of the Act under attack provides:

"Until June 30, 1935, there is hereby levied an excise tax of one-eighth of one cent per barrel on each and every barrel of petroleum oil produced in the State of Oklahoma after the passage and approval of this act. Such excise tax of one-eighth of one cent per barrel shall be reported to and collected by the Oklahoma Tax Commission at the same time and in the same manner as is now provided by Chapter 66, Article 5 of the Oklahoma Session Laws of 1931, for the collection of gross production tax on petroleum oil. On petroleum oil sold at the time of production, the excise tax thereon shall be paid by the purchaser, who is hereby authorized to deduct, in making settlement with the producer and/or royalty owner, the amount of tax so paid; provided that in the event oil on which such tax becomes due is not sold at the time of production, but is retained by the producer, the tax on such oil not so sold shall· be paid by the producer for himself, including ,the tax due on royalty oil not sold; provided further, that in settlement with the royalty owner, such producer shall have the right to deduct the amount of tax so paid on royalty oil, or to deduct therefrom royalty oil equivalent in value at the time such tax becomes due with the amount of tax paid."

Section 2 provides that the proceeds of such tax shall be kept in a separate fund and used only for the expenses of administering the proration statutes of Oklahoma.

Chapter 66, art. 5, Okl. S. L. 1931, provides that payment of such taxes shall be made monthly, and that delinquent taxes shall be a lien upon the property of the taxpayer.

This statute makes no provision for payment of taxes paid under protest, but section 12665, O. S. 1931, provides in part:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty days and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. All such suits shall be brought. in the court having jurisdiction thereof, and they shall have precedence therein; if, upon final determination of any such suit, the court determine that the taxes were illegally collected, as not being due the state, county or subdivision of the county, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

In McCoy v. Childers, 124 Okl. 256, 256 P. 25, it was held that this section was applicable to gross production taxes. The state, in its brief, asserts that the taxpayer, under this statute, is entitled to recover any illegal tax paid under protest, plus three per cent

interest paid by the depositary bank under section 5420, O. S. 1931. Cf. Corporation Comm. v. Lowe, 281 U. S. 431, 437, 50 S. Ct. 397, 74 L. Ed. 945.

The federal statute provides (Act March 3, 1921, c. 120, § 5, 41 Stat. 1250):

"That the State of Oklahoma is authorized from and after the passage of this Act to levy and collect a gross production tax upon all oil and gas produced in Osage County, Oklahoma, and all taxes so collected shall be paid and distributed, and in lieu of all other State and county taxes levied upon the production of oil and gas as provided by the laws of Oklahoma, the Secretary of the Interior is hereby authorized and directed to pay, through the proper officers of the Osage Agency, to the State of Oklahoma, from the amount received by the Osage Tribe of Indians as royalties from production of oil and gas, the per centum levied as gross production tax, to be distributed as provided by the laws of Oklahoma."

Against this statutory background, this case was filed. The plaintiff is the owner of a number of producing leases executed by the Osage Tribe, their value being largely in excess of $3,000. It is conceded that unless this tax is permitted by the quoted Act of Congress, it is a tax upon a governmental agency. Choctaw, O. & Gulf R. R. Co. v. Harrison, 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234; Indian Territory Oil Co. v. Oklahoma, 240 U. S. 522, 36 S. Ct. 453, 60 L. Ed. 779; Howard v. Oil Company, 247 U. S. 503, 38 S. Ct. 426, 62 L. Ed. 1239; Large Oil Co. v. Howard, 248 U. S. 549, 39 S. Ct. 183, 63 L. Ed. 416; Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338; Jaybird Mining Co. v. Weir, 271 U. S. 609, 46 S. Ct. 592, 70 L. Ed. 1112. Plaintiff owns properties in Oklahoma of a value in excess of $10,-000,000. Its right to do business in Oklahoma is worth in excess of $3,000. To pay the tax levied under this statute from the date it took effect until it expires by its terms in 1935, would entail an outlay of nearly $1,-500. Taxes now assessed amount to nearly $500.

There are general allegations in the bill as to irreparable injury, but the facts pleaded as to the extent of plaintiff's far-flung properties, and the knowledge that all possess as to its financial strength, belie any suggestion that its operations would be seriously impaired by the expenditure of $1,500 strung out over two years. It is only fair to say that no such allegation is made in the bill.

The briefs present three questions:

1. Is the tax a "gross production tax upon oil" within the meaning of the Congressional Act permitting such a levy on oil from the Osage leases?

2. Is the remedy at law, to pay the tax monthly under protest, and sue to recover it in twelve suits a year, or one suit with supplemental petitions for succeeding months, an adequate remedy under the federal statutes and decisions?

3. Is the requisite amount involved to confer jurisdiction upon the United States courts?

The last point must be examined first, for it goes to the jurisdiction of this court to pass upon the other two; and it cannot be waived, although the state has indicated its willingness to waive it if possible.

The plaintiff's position is that the unconstitutional tax clouds the title to property of a value of $10,000,000; and that the right to do business, unhampered by an illegal tax is worth in excess of $3,000. The defendant points out that the cloud upon the titles can be removed, and the obstruction to doing business cleared away, by the payment of $500 now, and not to exceed $1,500 during the life of the statute. That since the plaintiff is financially able to pay the tax without serious inconvenience, the actual controversy is over whether it owes $500 now and will owe $1,000 later.

The controlling decisions leave the matter in considerable doubt. The expression is many times used that the thing in controversy is the "right" sought to be protected from illegal interference. On the other hand, there are decisions that the federal courts cannot enjoin an illegal tax of less than the jurisdictional amount, because it clouds the title of property worth in excess of the jurisdictional amount. An examination of the leading cases relied upon by the parties may help clear up the confusion.

The plaintiff places its chief reliance upon Berryman v. Whitman College, 222 U. S. 334, 345, 348, 32 S. Ct. 147, 149, 56 L. Ed. 225. There a college had a contractual right to exemption from taxes, protected by the Federal Constitution. The taxing officers undertook to levy a tax in violation of that contract; the levy in question was less than the jurisdictional amount, but if the power existed, the jurisdictional amount would be reached in the succeeding years. The plaintiff alleged in its bill that it owned properties of large values, and that its contract right to be exempt from taxation was worth more than

the jurisdictional minimum. The taxing authorities there contended that since the tax then levied was less than the jurisdictional amount, the court could not proceed. To this the court answered:

"Considering the averments of the bill, the amount and value of the property of the corporation, and the nature and character of the contract of exemption asserted, it cannot be doubted that the value of the thing in issue, the contract right, exceeded in value the jurisdictional amount. Granting that the uncertainties of the future and the shifting ownership of property forbids, in a contest merely over the validity of a tax, adding the sum of future taxes which might be levied to the amount of taxes actually levied for the purpose of jurisdiction, that principle can have no application to a case where the issue presented is not only the right to collect, but also to levy all future taxes."

Further on in the opinion, reference is made to the earlier decisions, hereafter cited, which hold that jurisdiction depended upon the amount of the unconstitutional tax assessed. The court held that it was unnecessary to qualify or restrict them, saying:

"But such result is uncalled for, as an analysis of the cases will show that all of them considered, in the absence of contract, where the right to levy a particular tax was assailed, whether there was authority to make up the jurisdictional amount required, by calling into the consideration the influence which the judgment might have upon different taxes or the power to take in view future illegal taxes, upon the theory that they might be levied."

The analogy between that case and the one at bar is close. There the plaintiff claimed the contractual right to be exempted from state taxation; here, the plaintiff contends for the constitutional right to be exempt from such taxation without the consent of Congress. There is this difference on the facts: All of the taxes which can be levied under the existing statute do not equal the jurisdictional amount, while the taxes that might be levied in the cited case exceeded the jurisdictional amount. Perhaps there is room for this fine distinction: In the Whitman Case, the contract which the constitution protected was the property of the college; the constitutional exemption which plaintiff here claims is not its personal right, but the right of the sovereign which Congress may waive.

In City of Hutchinson v. Beckham (C. C. A. 8) 118 F. 399, 402, the city levied a tax upon a lawful business in contravention of the Federal Constitution. The annual tax, $1,200, was less than the jurisdictional amount. It appeared in that case, however, that unless the tax was enjoined, the plaintiff's employees would quit its service because of repeated arrests, and that as a result of the imposition of the tax the plaintiff would be forced to quit its business, it appearing inferentially at least that plaintiff could not pay the heavy license and continue on. That the case turned upon that point is indicated by the following excerpt from the opinion:

"From the complainants' standpoint, therefore,—and the case must be judged from their standpoint, and not exclusively from the standpoint of the city,—the amount involved in the litigation was not merely the license tax of $500 which accrued on June 1, 1900, but it was the total amount of their loss incident to the causes aforesaid, if the bill was not entertained, and if the city was left free to pursue its own course in enforcing the ordinance. Our attention has been invited to several cases which were brought to enjoin the collection of taxes that were alleged to be illegal, in which it was held that the amount in controversy for jurisdictional purposes was the amount of the tax (Transfer Co. v. Pendergrass, 16 C. C. A. 585, 70 F. 1; Walter v. Railroad Co., 147 U. S. 370, 13 S. Ct. 348, 37 L. Ed. 206; Railroad Co. v. Walker, 148 U. S. 391, 13 S. Ct. 650, 37 L. Ed. 494); but an examination of these cases shows that they are not analogous to the case at bar, in that it did not appear that the complainants would sustain any other direct damage save the amount of the tax, which, if paid under protest, they could recover in an action at law, if the tax was found to be illegal. The present case is distinguishable from the cases relied upon by the appellants, in that the tax involved is a license tax imposed by a municipality upon a business concern, the payment of which tax may be enforced by fining and imprisoning its employees and by daily arrests that will seriously interfere with the prosecution of complainants' business, and inflict a much greater direct loss than the amount of the tax. The suit at bar, in view of the allegations touching the effect upon the complainants' business, if the city is permitted to proceed with the enforcement of the ordinance in its own way, is in reality a bill to prevent the city from breaking up and destroying an established business under the guise of enforcing an illegal ordinance."

Other cases cited by plaintiff do not involve the collection of taxes. One of them, Mississippi & Missouri River R. R. Co v. Ward, 2 Black, 485, 17 L. Ed. 311, was an

action to abate a bridge across the Mississippi River because it was an obstruction to the navigation of the river by a steamboat. There was no showing of the value of the stream for navigation purposes; however, the Supreme Court held that it was not the amount of damages inflicted by the nuisance that formed the basis of the jurisdictional amount, but it was the value of the object sought to be obtained by the suit, that is, the removal of the bridge. In this case, the obstruction can be removed by a payment of $1,500. In Western & Atlantic R. Co. v. Railroad Commission, 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645, it was held that the courts had jurisdiction of a controversy involving the right of the state to require that a spur track be constructed, even though the cost of construction did not equal the jurisdictional amount, because the order involved not only the construction of the track, but the expense of operating and maintaining it. In Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596, a statute required that bus companies should give bond to protect the public against liability. The cost of such bonds did not equal the jurisdictional amount, but the affidavits disclosed that such cost would reduce the earnings of the company to the point of confiscation, and thus force it to abandon a business worth more than the jurisdictional amount. In Ratta v. Healy (D. C.) 1 F. Supp. 669, it likewise appeared that if the license tax against peddlers was enforced the abandonment of the plaintiff's business must result. That the question of jurisdictional amount, even in that case, was not free from doubt is disclosed by the order of the Supreme Court therein, entered February 20, 1933 that:

"In this case probable jurisdiction is noted. The Court desires to hear argument upon the questions: (a) whether a case for equitable relief is shown; (b) whether the amount in controversy is such as to sustain the jurisdiction of the Court below." Healy v. Ratta, 288 U. S. 593, 53 S. Ct. 401, 402, 77 L. Ed. 971.

The case was later dismissed when it appeared that the application for a preliminary injunction was not pressed. Healy v. Ratta, 289 U. S. 701, 53 S. Ct. 522, 77 L. Ed. 1459.

Turning now to the cases on the other side: In Washington, etc., Railroad v. Dist. of Columbia, 146 U. S. 227, 232, 13 S. Ct. 64, 66, 36 L. Ed. 951, the plaintiff sought to enjoin a tax which was alleged to be invalid, and further alleged that unless the tax were enjoined irreparable injury to its business would result. Chief Justice Fuller, speaking for a unanimous court, held that jurisdiction was dependent upon the sum or value really in dispute between the parties, and that it was to be based without regard to the collateral effect of the judgment, and that

"The matter in dispute in its relation to jurisdiction is the particular taxes attacked, and unaccrued or unspecified taxes cannot be included, upon conjecture, to make up the requisite amount."

In Walter v. Northeastern R. R. Co., 147 U. S. 370, 13 S. Ct. 348, 37 L. Ed. 206, the railroad company brought an action to enjoin the collection of a tax which it alleged to be unconstitutional and void. The taxes in the various counties through which the railroad ran exceeded $2,000, but the tax in no single county equaled that sum. The court held there was no jurisdiction.

In Northern Pacific Railroad v. Walker, 148 U. S. 392, 13 S. Ct. 650, 37 L. Ed. 494, it was alleged that certain void taxes were a cloud upon the properties of the plaintiff; the bill was dismissed because

"The record does not show that the amount of the assessments and taxes, forming the subject of the litigation, levied in either or all of the counties, exceeded the sum of $2,000; and even if this had been so as to the aggregate, the defendants could not have been joined in a single suit, and the jurisdiction thus been sustained."

In Ogden City v. Armstrong, 168 U. S. 224, 18 S. Ct. 98, 42 L. Ed. 444, several landowners brought a joint suit to enjoin the collection of a tax. In the case of only one plaintiff did the tax, for the full ten years it might be assessed, equal the jurisdictional amount. The court took jurisdiction in that one case, but dismissed it as to all other plaintiffs.

In Holt v. Indiana Manufacturing Company, 176 U. S. 68, 72, 20 S. Ct. 272, 273, 44 L. Ed. 374, the plaintiff sought to enjoin the collection of personal taxes on the ground that the state had no constitutional power to levy a tax upon letters patent issued by the United States government. The case was dismissed because it did not appear that the taxes levied equaled the jurisdictional amount, the court saying:

"Treating this bill as setting up a case arising under the Constitution or laws of the United States on the ground that the laws of Indiana authorized the taxation in

question, and were therefore void because patent rights granted by the United States could not be subjected to state taxation, or because the obligation of the contract existing between the inventor and the general public would be thereby impaired, or for any other reason, the difficulty is that the pecuniary limitation of over $2,000 applied, and the taxes in question did not reach that amount. And the effect on future taxation of a decision that the particular taxation is invalid cannot be availed of to add to the sum or value of the matter in dispute."

It will be observed that the contention in this case is precisely the contention in the case at bar, to wit, that the state had no power to tax an agency of the federal government.

These cases were not overruled by the later decision in the Whitman College Case, and have been followed in recent years by the inferior Federal courts. Among others, see Fishback v. Western Union Teleg. Co., 161 U. S. 96, 16 S. Ct. 506, 40 L. Ed. 630; Adam Schumann Associates v. City of New York (C. C. A.) 40 F.(2d) 216; Delaware Consolidated Oil Co. v. Randall (D. C.) 34 F.(2d) 666; Turner v. Jackson Lbr. Co. (C. C. A.) 159 F. 923, dismissed 218 U. S. 685, 31 S. Ct. 220, 54 L. Ed. 1209; Shewalter v. City of Lexington (C. C.) 143 F. 161; Georgia Power Co. v. Hudson (C. C. A.) 49 F.(2d) 66; Vicksburg, S. & P. Ry. Co. v. Nattin (D. C. La.) 51 F.(2d) 1061. In the latter case, the court held that a complainant cannot add the tax of subsequent years to those which are due in order to make up an amount sufficient to give a Federal court jurisdiction, and that the jurisdiction depended upon the amount of the particular tax involved.

The recent case of Matthews v. Rodgers, 284 U. S. 521, 526, 52 S. Ct. 217, 220, 76 L. Ed. 447, may have some bearing upon the question. There the court assumed, but expressly without deciding, that the jurisdictional amount was involved, and the case turned on whether there was an adequate remedy at law. The court further assumed that if the plaintiffs did not pay the challenged tax, the resultant injury to their business would be irreparable. Nevertheless the court held:

"But appellants insist that the appellees are under no such constraint, either to expose themselves to the penalties for failure to pay the tax or to seek equitable relief against its collection, since each of them may pay the tax to the collecting officer under protest, and, under the laws of Mississippi, may maintain a suit at law for its recovery on the ground that it was exacted in violation of the Constitution of the United States. That such a procedure saves to the taxpayer his federal right, and, if available, will defeat the jurisdiction of federal courts to enjoin the collection of the tax, has long been the settled rule in this Court."

The court, in the same opinion, also said:

"The reason for this guiding principle is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount, sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States."

Perhaps a fair distinction may be drawn between cases where the payment of a tax is a condition precedent to carrying on a lawful business, or where failure to pay is accompanied by severe criminal or civil liabilities, particularly where the taxpayer is financially unable to pay under protest, and cases where the tax levied is simply a liability against the property or person taxed. Such a distinction reconciles many of the cases, but will not serve to distinguish the Whitman College Case. If the latter case can be distinguished, it must be on the ground that the college owned a valuable contract for the integrity of which it invoked the federal constitution, and in truth and fact the controversy was over that contract and not the tax; while here the controversy is over the tax alone.

Although the decisions do not leave the matter altogether free from doubt, we are constrained, under the caveat in Matthews v. Rodgers, supra, to hold that the controversy here presented does not exceed the sum of $1,500. None of the "special circumstances" referred to in Matthews v. Rodgers is here present. There is and can be no allegation that the plaintiff is unable to pay the tax, and that its business must be abandoned if it is required to pay under protest and sue to recover. There is no allegation that the collector would be unable to respond to the judgment if one were rendered. There is no

allegation that plaintiff's employees would forsake it, its business be disrupted, or any other consequential injury flow from the payment of this monthly pittance to the state.

The record here presents the unvarnished question whether the Federal courts have jurisdiction to enjoin the collection of state taxes, no matter how trifling the amount, if the bill alleges that the right to do business free from an illegal tax is of a value in excess of $3,000. If such is the law, then any taxpayer of size may come into the Federal courts whenever it cares to contest any tax liability.

In the light of the many adjudications that the jurisdiction of the Federal courts depends upon the amount of the tax sought to be exacted, we are loath to hold that jurisdiction exists because of an allegation that the intangible right to do business unhampered by the tax is worth more than the jurisdictional amount.

If it were clear that this court was without jurisdiction of this cause, it would be inappropriate to pass upon the other two points exhaustively briefed by the parties. Harvey Co. v. Malley, 288 U. S. 415, 53 S. Ct. 426, 77 L. Ed. 866. Absence of jurisdiction is not at all clear, as demonstrated by the fact that Judge KENNEDY believes the Whitman Case controlling. Under such circumstances, we believe that a trial court may fairly pass upon the other points in order to expedite the final determination of the controversy.

It may therefore be said that Judge KENNAMER agrees with Judge KENNEDY that there is no adequate remedy at law; and that the writer agrees with Judge KENNEDY that whatever the character of the tax assailed—whether it is an excise tax or a property tax—it is a tax on gross production of oil within the permissive act of Congress. Judge KENNAMER is of a contrary mind; his position is that the three per cent gross production tax long in effect in Oklahoma (C. O. S. 1921, § 9814) is a property tax—a tax on the mineral estate in the land in lieu of all other property taxes; that gross production is used as a convenient and roughly accurate method of arriving at the value of the mineral estate; that the Oklahoma Supreme Court has so construed the earlier state statute. Meriwether v. Lovett (Okl. Sup.) 26 P.(2d) 200, and cases therein cited. He is of the opinion that the tax under attack, being nominal in amount, assessed without regard to the value of the oil produced, and levied for a particular purpose, is clearly an excise tax. Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Mid-Continent Air Express Corp. v. Lujan, State Comptroller (D. C.) 47 F.(2d) 266; United States Airways, Inc., v. Shaw (D. C. Okl.) 43 F.(2d) 148; Field Packing Co. v. Glenn (D. C.) 5 F. Supp. 4.

It follows that the bill should be dismissed.

KENNEDY, District Judge (concurring in the result).

I desire briefly to record my views in regard to the disposition of this case. The plaintiff has no adequate remedy at law, for two reasons: (1) It is required that the tax shall be paid monthly and a lien attaches. Therefore there would be involved the necessity of a multiplicity of suits for recovery back if such taxes were paid under protest. (2) There is no adequate method provided for the recovery of interest upon taxes so paid. The provision of the general statutes of Oklahoma providing for recovery of 3 per cent. on illegal taxes is not adequate, especially in the absence of evidence establishing such rate as reasonable.

As to the amount involved not being sufficient to give the federal court jurisdiction, I cannot agree that the amount of the tax involved must be adopted as the basis of determining the amount in controversy. I am unable to distinguish the case at bar from the case of Berryman v. Board of Trustees of Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225. There the Supreme Court decided that the value of the contract to be protected determined the jurisdictional amount. Here the right to be protected is the freedom from state taxation of an agency of the federal government. The latter principle of right has been so long and so repeatedly established that it is equivalent in strength to a contract right. Neither do I believe that the incident of future taxes which may or may not be levied necessarily enters into the consideration of the question under the doctrine of the Berryman Case. Mr. Chief Justice White, in writing the opinion, quoted with approval the language of a former decision of the court, and at page 347 of 222 U. S., 32 S. Ct. 147, 149 says: "The contest was over the contract and the consequent want of power to collect any and all taxes the assessment of which did violence to the contract rights of the bank. The court had jurisdiction of the parties and of the subject-matter of the suit, and it was adjudicated that there was a contract which was entitled to

protection against impairment by state legislation within the right guaranteed by the Federal Constitution. This adjudication necessarily included not only the taxes for specific years, but foreclosed the right to collect any taxes concerning which the contract afforded immunity to the bank."

If the right to the protection against taxes upon a federal agency is analogous to a contract right, I can find no distinguishable difference between the cases. To say that present and future taxes which by the terms of the present act apparently expire on July 1, 1935, will not aggregate the jurisdictional amount would mean that the Legislature of Oklahoma could pass repeating statutes of the same character for a limited duration, thereby defeating the right of the plaintiff to be free from the recurring lien of illegal state taxes. In this view, I think that the court has jurisdiction of the cause and should decide it upon the merits.

Adverting to the merits, the claim is made by plaintiff that the tax in question is an excise tax and not a property tax, and therefore not within the permissive act of Congress quoted in the opinion of Judge McDERMOTT. It will be noted that there is no specified limit to the gross production tax there permitted. It is immaterial in the practical construction of the act of Congress what the tax here may be called. In its nature it is the same type of tax which the state of Oklahoma has already levied on gross production upon the basis of value (admittedly valid as coming within the permissive act). Under the challenged law, attempt is made to levy a gross production tax upon the basis of volume. There is no distinguishable difference between the two. Both are within the scope of the permissive act, and I care not whether they may be denominated excise, gross production, or property taxes.

In our interpretation and construction we should follow the principle aptly stated in Shaffer v. Carter, 252 U. S. 37, where the Supreme Court in speaking of state taxation laws, uses language at page 55, 40 S. Ct. 221, 226, 64 L. Ed. 445 as follows: "This argument, upon analysis, resolves itself into a mere question of definitions, and has no legitimate bearing upon any question raised under the federal Constitution. For, where the question is whether a state taxing law contravenes rights secured by that instrument, the decision must depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed."

I think the tax here challenged comes clearly within the permissive act of Congress, and, for that reason, the bill should be dismissed upon the merits.