## Tax on Home Owners' Loan Bonds

Department of Justice. Opinion to Hon. H. Edgar Barnes, Secretary of Revenue.

MARGIOTTI, Attorney General, June 18, 1935.—We have your letter of June 11th requesting the opinion of this department as to the application of the provisions of The Documentary Stamp Tax Act of May 16, 1935, P. L. 203, as amended June 22, 1935, P. L. 439, to bonds secured by mortgages given to the Home Owners' Loan Corporation by borrowers of money from it.

Section 3 of the act provides as follows:

"Every person who makes, executes, issues, or delivers any document, or in whose behalf any document is made, executed, issued, or delivered, except corporations, associations, trusts, community chest funds or foundations, organized exclusively for charitable, religious, or educational purposes, no part of the income of which inures to the benefit of any private shareholder, member, or indi-

vidual, shall be subject to pay for, and in respect to such document, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of five cents (5c) for each one hundred dollars ($100.00), or fraction thereof, of the value represented by such document, payable at the time of making execution, issuance, or delivery of such document."

The Home Owners' Loan Corporation Act of June 13, 1933, 48 Stat. at L. 128, sec. 4(c), provides in part as follows:

"The bonds issued by the Corporation under this subsection shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or any District, Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority. *The Corporation, including its franchise, its capital, reserves and surplus, and its loans and income, shall likewise be exempt from such taxation;* except that any real property of the Corporation shall be subject to taxation to the same extent, according to its value, as other real property is taxed." (Italics ours.)

The Home Owners' Loan Corporation, created by the act, is therein expressly declared to be "an instrumentality of the United States".

A somewhat similar question was discussed in a formal opinion of this department dated December 11, 1930, addressed to Honorable Charles Johnson, the then Secretary of Revenue. In this opinion the Secretary of Revenue was advised that mortgages given to a Federal land bank were not subject to the State tax imposed upon mortgages and deeds offered to be recorded in the offices of the recorders of deeds throughout the Commonwealth. This opinion cited and relied upon the case of Federal Land Bank of New Orleans v. Crosland, 261 U. S. 374 (1923). Therein it was stated that the tax in question, although collectible only from the lender, the Federal land bank,

and then only when the mortgage in question was presented for recording, was, nevertheless, a "tax upon the mortgage."

The court pointed out (p. 377) that:

"The law of Alabama does make it practically necessary to record such deeds, because it overrides them if not recorded, in favor of any purchaser without notice. While it does so it cannot say that it leaves the Bank free to record or not. The Bank has a choice, it is true, but so has one who acts under duress."

The same observations might be made with regard to The Documentary Stamp Tax Act. Although the tax is payable by the person executing and delivering the mortgage, it is, nevertheless, a tax upon the document and under the provisions of section 8 of the act, the document cannot be recorded unless the stamp is affixed. In practical effect, therefore, the cases are analagous.

It has been suggested, however, that the case of Federal Land Bank of New Orleans v. Crosland, supra, is not applicable because the statute under consideration there expressly exempted "mortgages executed to the Federal Land Banks", whereas no such express provision is contained in the Home Owners' Loan Corporation Act. The latter act, however, does exempt the corporation "and its loans" from State taxation.

A loan has been defined "as an advancement of money upon a contract or stipulation, expressed or implied, to repay at some future day": 5 Words and Phrases (1st series) 4196, citing Brittin v. Freeman, 17 N. J. L. 191. While usually a loan is either a lending, that which is lent, or the permission to use that which is lent, it is also "a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows": 38 C. J. 126, citing In Re Grand Union Company, 219 Fed. 353. Therefore, it is our opinion that it was clearly the intention of Congress to exempt the instrument or document evidencing loans by the words exempting the loans themselves.

The provision can admit no other consistent interpretation. A loan is an intangible thing and cannot of itself be exempt from taxation unless the consideration advanced and the instrumentality evidencing the loan are likewise exempt. We, therefore, conclude that The Documentary Stamp Tax Act cannot require the affixing of stamps to documents given to the Home Owners' Loan Corporation evidencing indebtedness to it.

The same conclusion results from the consideration of another aspect of this question. As stated above, the Home Owners' Loan Corporation is expressly declared to be an instrumentality of the United States.

An unbroken line of authorities, beginning with the famous case of McCulloch v. Maryland, 4 Wheat. (U. S.) 316 (1819), have held that the State has no power to tax an instrumentality of the United States. In that case, Chief Justice Marshall said:

"That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance, in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied. . . .

"The question is, in truth, a question of supremacy; and if the right of the States to tax the means employed by the general government be conceded, the declaration that the constitution, and the laws made in pursuance thereof, shall be the supreme law of the land, is empty and unmeaning declamation."

"The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation *or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government.* This is, we think, the unavoidable conse-

quence of that supremacy which the constitution has declared." (Italics ours.)

In Jaybird Mining Co. v. Weir, 271 U. S. 609 (1926), it was held that the State of Oklahoma could not impose an ad valorem tax on ores mined under a lease given by the Secretary of the Interior of Indian lands. The court said:

"It is elementary that the federal government in all its activities is independent of state control. *This rule is broadly applied.* And, without congressional consent, no federal agency or instrumentality can be taxed by state authority. 'With regard to taxation, no matter how reasonable, or how universal and undiscriminating, the State's inability to interfere has been regarded as established since McCulloch v. Maryland, 4 Wheat. 316.'" (Italics ours.)

In the recent case of Panhandle Oil Co. v. Mississippi, ex rel., 277 U. S. 218, the court went so far as to deny to the State of Mississippi the right to impose a tax upon the privilege of one of its citizens of selling gasoline to the Federal Government. The decision turned solely upon the proposition that the imposition of the tax would hamper or burden the activities of the Federal Government.

The Home Owners' Loan Corporation was created by an Act of Congress to carry out a declared policy of the Federal Government in the exercise of its constitutional powers. That the corporation performs a governmental function is clear. Its activities are not distinguishable in principle from those of the Federal Land Bank under consideration in Federal Land Bank of New Orleans v. Crosland, supra. Furthermore, we have recently advised the Secretary of the Commonwealth that the RFC Mortgage Company, which engages in similar activities, performs a governmental function: Taxation of R. F. C. Mortgage Co., 24 D. & C. 23. If the bonds, notes and mortgages, which the corporation takes from those who borrow from it, are taxed, the operation of the corporation would manifestly be restricted and its ability to per-

form its function of relieving distressed home owners would obviously be curtailed.

The taking of evidences of indebtedness by the corporation from its borrowers is absolutely essential to the carrying on of its activities. If these evidences of indebtedness can be taxed at all by a State, even though the tax is payable by those persons who execute or issue them, the rate of tax could be established at a point so high that it would be prohibitive and would completely halt the activities of the corporation. Therefore, any taxation, similar to that under discussion, would, in the words of Chief Justice Marshall, clearly retard, impede and burden the operation of the law enacted by Congress.

Accordingly, we are of the opinion and so advise you that under the provisions of The Documentary Stamp Tax Act of 1935 the Commonwealth cannot require stamps to be affixed to bonds secured by mortgages given to the Home Owners' Loan Corporation by borrowers of money from it.